## Erie Railroad Co., Appellant, *v.* The Public Service Commission.

*Public Service Commission—Railroad companies—Federal control—Grade crossings — Relocation of tracks — Power of commission to order relocation.*

1. The fact that a railroad company was under the control of the director general of railroads did not deprive the Public Service Commission of jurisdiction over the corporation which owned the road, in a proceeding to abolish a grade crossing. Where in such proceedings a second crossing is abolished, without expense to the railroad company, the fact that there was no complaint against the latter crossing or that no testimony was taken in reference thereto, is immaterial.

2. In a complaint to abolish a grade crossing the ascertainment of damages must not necessarily be determined before the order is made, or is the order, on that account, incomplete or unsupported by the evidence. The order which adopted the plan for the abolition of the crossing is not a taking of property. It is the putting the plan into execution which injures the owner of adjacent property. The assessment of damages would follow the appropriation and the estimate of the proportionate share of the costs, as distributed by the commission, would be made following the ascertainment of land taken and the expense of construction. For the commission to find the damages would be merely suggestive, for the owner would not be bound by such finding, having a right of appeal to the court of common pleas from the determination of the damages by the commission.

3. The compensation for damages accrues when the property has been taken, injured or destroyed in the construction, relocation,

alteration or abolition of any crossing. The injury must result before the right to damages arises. Otherwise no order could take effect before the amount of damages was determined by the commission. The subject of damages remains within the power of the Public Service Commission, pending the completion of the work.

4. Under the police power of the Commonwealth, the Public Service Commission has authority to require a railroad company to relocate its tracks in order to abolish a grade crossing. In such case, it is not the railroad company which takes private property to facilitate the carrying out of a crossing change, but the Commonwealth acts and makes the necessary appropriation. While there is no express provision in the Public Service Company Law which authorizes the commission to require a relocation of the tracks to make practicable the abolition of a grade crossing, that would seem to be the necessary implication as to the power of the commission, to be exercised within reasonable limits.

Argued November 18, 1920. Appeal, No. 9, March T., 1921, by plaintiff, from report and order of the Public Service Commission of Pennsylvania in the case of the Motor Club of Lackawanna County v. Erie Railroad Company, Complaint Docket No. 2642. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint that existing grade crossing on Erie Railroad Company over State Highway Route No. 168 in the Borough of Elmhurst, Lackawanna County is dangerous and should be abolished.

The commission made the following report and order:

The grade crossing complained of in this case is where State Highway Route No. 168 crosses two tracks of the Erie Railroad Company in Elmhurst Borough, Lackawanna County. The tracks crossed are a branch of the Erie railroad which extends from Scranton eastwardly, connecting with its main line at Lackawaxen. One of the tracks crossed is a siding terminating a short distance south of the crossing. While the general direction of the main track is east and west, at the point of crossing it extends practically north and south, its Elmhurst

station being about 200 feet north of the crossing complained of.  The state highway, leading from Scranton to Stroudsburg, also extends in a northerly and southerly direction at this point, crossing the tracks obliquely. Another highway leads from the state highway eastwardly, crossing at grade the single track of respondent company about 1,500 feet south of the crossing complained of.

The state highway department is improving this highway as one of the State's primary roads.  On March 25, 1919, the commission found the crossing complained of dangerous.  Plans providing for its abolition were filed by the state highway department as well as by the railroad company.  These plans were considered at a meeting held for that purpose, oral argument was had and briefs filed.  After argument, the state highway department filed revised plans which provide for a vertical clearance of 14 feet and a horizontal clearance of 29 feet, of which 24 feet will be occupied by a roadway and 5 feet by a sidewalk.

The estimated cost of the improvement, without property damages as submitted by the state highway department, is $64,576.71.  The estimate submitted by the railroad company is $77,535.  The revised plans of the state highway department provide for the relocation of both the railroad track and the highway, so that the highway will pass underneath the railroad at a point about 200 feet south of the crossing complained of. Said plans contemplated the abolition of the other crossing 1,500 feet south thereof, all travel to be diverted to the new subway.  The plans also provide foundations wide enough to carry two tracks with a superstructure, however, for only one track; the siding to be shortened so as to terminate just north of the proposed subway.

The conclusions reached by the commission are as follows:

That the revised plans, as submitted by the state highway department, be approved.

The respondent, the Erie Railroad Company, do all the work necessary to abolish the crossing in compliance with the revised plans, as made by the state highway department, save that the state highway department construct the cement roadway in the new highway as relocated and perform all work to properly drain the same and lay the cement sidewalk as shown by the plans. All of said work shall be completed on or before November 1, 1920.

That the total cost of eliminating said crossing according to the plans, including the cost of the necessary right-of-way, to relocate both the highway and the railroad tracks, as well as property damages, if any, is hereby apportioned and will be paid as follows:

The state highway department will pay for all of the work which is, by this report, required to be done by it, and in addition thereto will pay to the Erie Railroad Company the sum of $17,500.

The County of Lackawanna shall pay to the Erie Railroad Company the sum of $6,000.

The Borough of Elmhurst shall pay to the Erie Railroad Company the sum of $500.

The Public Service Commission hereby appropriates from the general fund appropriated to it for the elimination of grade crossings by the Act of July 18, 1919, P. L. 1048, the sum of $3,500, to be paid to the Erie Railroad Company.

The Erie Railroad Company, respondent, shall pay the entire balance of cost of eliminating said crossing including property damages. The several payments herein provided to be made to the Erie Railroad Company, respondent, shall be paid to it as the work progresses, when and as certified to by the Public Service Commission.

The Erie Railroad Company shall hereafter maintain the bridge abutments and superstructure erected thereon.

The cement sidewalk to be laid by the state highway department through said subway should be continued by the borough, at its own cost and expense, a proper distance on each side thereof.

### ORDER.

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and the commission having by its order dated March 25, 1919, found and determined that the existing crossing at grade, at a point where the tracks of the Erie Railroad Company cross State Highway Route No. 168, distant about 300 feet in an easterly direction from the station of the Erie Railroad Company, in the Borough of Elmhurst, and near the Vogelbacher Hotel, Lackawanna County, Pa., is dangerous to the traveling public and the abolition thereof necessary for the accommodation, convenience and safety of the public, and further hearing having been held upon the question of the adoption of plans prepared by the state highway department and the appointment of the cost and expenses incident to the abolition of said grade crossing, including damages due to owners of adjacent property taken, injured or destroyed by reason thereof, and the matters and things involved having been fully considered, and the commission having on the date hereof, made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, August 10, 1920, It is ordered: That said grade crossing situate in Elmhurst Borough, Lackawanna County, be and the same is hereby abolished in accordance with the revised plans submitted by the state highway department, which said plans are hereby approved.

It is further ordered: That the Erie Railroad Company, the County of Lackawanna and the Borough of Elmhurst, Lackawanna County, severally carry out the

findings and determinations of the commission, in the manner and according to the terms and conditions contained in the foregoing report.

Plaintiff appealed.

*Error assigned,* among others, was the order of the commission.

*Douglass D. Storey,* and with him *Ralph J. Baker* and *Duane E. Minard,* for appellant.

*Berne H. Evans,* and with him *John Fox Weiss,* for the Public Service Commission.

OPINION BY HENDERSON, J., March 5, 1921:

This is an appeal from the order of The Public Service Commission directing the abolition of a grade crossing at a point where State Highway No. 168, in Lackawanna County, crosses a branch of the Erie Railroad Company in the Borough of Elmhurst. The proceeding was initiated by the Motor Club of Lackawanna County; the complaint being that the crossing is dangerous. Hearings were had at different times by the commission, evidence was taken bearing on the subject, and a final order was made August 10, 1920, abolishing the crossing in accordance with the revised plans submitted by the state highway department, which plans were approved by the commission. A distribution of the cost of the improvement was made among the parties in interest. The appellant sets forth several objections to the action of the commission which will be considered in their order.

(1) The first proposition presented is that the appellant was not a public service company within the meaning of the law at the time the complaint was presented to the commission; that the director general of railroads was in charge of the defendant's property and should have been made the respondent in the proceed-

ing.  It is conceded that the appellant was a public service corporation doing business within this State at the time the act of Congress, known as the Federal Control Act, was adopted.  That act did not destroy or suspend the life of the corporation.  It authorized the taking possession of the physical properties of the company and the control and operation of them for the purposes declared in the proclamation of the President of the United States, but it did not deprive the owner of the right to exercise such corporate authority and perform such corporate acts as were consistent with the act of Congress and the proclamation issued pursuant thereto. It was not in contemplation of the Congress that the power under which the State exercised the right to regulate railroad companies should be suspended or impaired, except where such regulation might affect the transportation of troops, war materials or government supplies.  The director general of railroads was not directly interested in the subject of grade crossings, for they had no proper relation to the purposes for which he administered the business of the railroad corporations.  The owning company was interested directly in the permanent improvement of its property, and was not deprived of its power to negotiate for the abolition of grade crossings, nor was it relieved of responsibility with respect to the exercise of authority on the subject by the Commonwealth through the Public Service Commission.  In an important sense, it was a railroad corporation "doing business within this State" and subject to the regulations of the Public Service Commission to the extent to which the functions of the latter body were not for the time being suspended by reason of the federal control statute.  Sustaining such relation of responsibility, it has no defensible position of complaint that the director general of railroads was not made a party to this proceeding.  It was expressly provided in the Federal Control Act that nothing therein shall be construed to amend, repeal, impair or affect the

existing laws or powers of the states in relation to taxation or the lawful police regulation of the several states except wherein such laws or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds. It will thus be seen that the states were left in full exercise of their police power with the special exceptions in the act expressed, none of which have any bearing on the subject under consideration. That the "lawful police regulations" included the authority exercised by the Public Service Commission admits of no doubt. The abolition of grade crossings is a movement in promotion of public safety, and thereby conduces to the general welfare. We see no reason for holding that the director general was a necessary party to the proceedings, or that the appellant was improperly brought into it after the complaint was filed.

Moreover, the railroad company appeared through its counsel, participated in the examination of witnesses, offered evidence, and took part in the discussion of the various questions which arose before the commission, and in effect approved of the proposition to abolish the crossing. We think, therefore, it ought not to be now heard in objection to the jurisdiction of that body to entertain the complaint and enter an order on the subject.

(2) It is argued that the order is not in conformity with law in that it not only abolishes the crossing on road No. 168 with respect to which the petition was filed, but also includes the abandonment of a crossing on road No. 172 with respect to which no complaint had been made. This crossing is about 1,500 feet south of that on road No. 168. When an examination of the situation was made by engineers of the commission and the highway department, it was the recommendation of the engineers and the conclusion of the commission that the crossing proposed to be established on the latter road be substituted for both of the grade crossings. We do not

understand from the evidence that the abandonment of the crossing on road No. 172 subjects the appellant to any inconvenience or loss. The use of the crossing is to be discontinued because a better one will be created by the structure proposed in the plan adopted by the commission. It is unnecessary, therefore, to go into an inquiry as to the power of the commission on their own initiative to abolish a crossing. It is not seriously contended, as we understand the argument, that they might not do so. The complaint seems to be that it was done without notice to the appellant, and without evidence. We do not understand in what respect the appellant is harmed, and if not injured, it has no ground of complant. It would seem to be to its advantage to have the crossing abandoned as the track would thereby be made safer for the operation of the appellant's trains. It cannot be correctly said that a hearing was not had on the subject, for there was frequent reference in the testimony and in the discussion of the whole question to the crossing on road No. 172 and to the advantage to be gained by abolishing it and making the new way serve the uses of the community.

(3) Further objection is made that the record is incomplete and that it will not sustain the order because there was not an ascertainment of all the damages likely to result to property owners from putting the plan into operation, and section 12 of article V of the Public Service Commission Act is brought to our attention in support of the position taken. The argument is that the final order fixing a plan for such an improvement cannot be made until there has been an ascertainment and apportionment of the costs and damages. A sufficient reply to this position is that the adoption of the plan is not the taking of property; it is the putting of the plan into execution which injures the owner of adjacent property. The ascertainment of damages would follow the appropriation, and the estimate of the proportionate share of the costs, as distributed by the commission,

would be made following the ascertainment of the cost of land taken and the expense of construction. Ascertainment of damages by the commission would be merely tentative, for the owner would not be bound by such finding, there being a right of appeal to the court of common pleas from the determination of the commission as to damages. As the State is responsible for the damages in the first instance under the statute, there seems to be no reason why the plan of the commission might not be carried into effect before the determination of the amount of the damages, and this we think the statute authorizes. The compensation for damages accrues when property has been taken, injured or destroyed in the construction, relocation, alteration or abolition of any crossing. The injury must result before the right to damages arises. Otherwise no order could take effect before the amount of the damages was determined by the commission. The subject of damages is still within the power of that body.

(4) Another complaint is that the commission has no power to order the railroad to relocate its tracks off its right-of-way and acquire a new right-of-way by condemnation or otherwise in order to abolish a grade crossing. It appears from the plans adopted that in order to carry out the project it is advisable to build the highway under the railroad tracks. Owing to the conformation of the ground and the relation of the railroad tracks to the site of the crossing, the highway engineers, after consultation with the engineer of the commission, recommended a slight change in the location of the railroad track for a distance of about 1,100 feet where it describes a curve. The change suggested involved the moving of the track westwardly at the deepest place in the curve, a distance of about 56 feet. It did not appear that this was prejudicial to the appellant as an engineering proposition, and the evidence was all to the effect that it made the crossing plan much more practicable. When the subject was under consideration the appellant's coun-

sel said: "I think I should make a statement as to the railroad's views. The Erie railroad approaches the elimination of this crossing in good faith and would like to see it eliminated, and we think well of the state engineer's plan and haven't any improvement to suggest except the detail we have mentioned here." The detail referred to appears to have been the construction of a sidewalk and the paving of the road for a few hundred feet from the crossing at the place where route No. 172 would join No. 168. In the same connection with respect to the change of the location of the track the counsel said: "I might say right here that while it isn't our intention to make any point of it, I think there is a question in my mind as to whether the order of the commission can relocate a road......I merely suggest that in consideration of the order that might be made." He then proceeded to discuss the plan, and having objected to the paving bill said: "And second, I don't think we ought to pay on the basis of a cost for relocating our right-of-way. We ought to have some deduction out of the $20,000 additional cost for relocating our right-of-way and that should be restricted or reflected in the proportion. Now when you have taken out the paving question, if these estimates are reasonable, I think the railroad would be willing, as far as it is able, to pay fifty per cent of the elimination. Something ought to be said, too, I think, who should do this work in case the commission makes the order......but we have no objection to the highway department making the improvement, but any laying of track or ballasting of tracks, we feel are necessary for us to do on account of standards, etc. Q. (By Mr. Rilling) Would your company object to doing the work necessary to relocate the tracks? A. I don't think they would." The discussions and colloquies of which the foregoing is a part tend strongly to show that the proceeding was in the main amicable and that the plan adopted by the commission was approved by the appellant's representative. The minor

objections presented did not go to the merit of the project or the expediency of the order for the construction of the crossing. We might with propriety hold therefore that the plan presented by the commission was accepted and approved by the appellant. The subject of cost was considered and evidence taken with reference thereto and full opportunity afforded the appellant to offer any testimony deemed necessary or valuable in the final determination of the case. We see no support, therefore, for the contention that the order was made without evidence and without opportunity for the appellant to be fully heard. The only subjects to which exception is taken were the few hundred feet of paving of the highway and the building of the sidewalk through the crossing and the proper proportion of the cost of the moving of the track which should be borne by the railroad company. In other respects the action of the commission appears to have been with the consent and approval of the appellant. We may agree with the learned counsel that the authority to condemn land for railroad purposes is vested exclusively in the directors of the corporation so far as the power of the railroad company is concerned, but the proceeding here is by virtue of a paramount authority, the police power of the Commonwealth. It is not the railroad company which takes private property to facilitate the carrying out of a crossing change. The Commonwealth acts in such cases and makes the necessary appropriation. The question here is rather one of the removal of the track to a location within land appropriated by the State to that purpose contiguous to the right-of-way. While there is no express provision in the public service law which authorizes the commission to require a relocation of the tracks to make practicable the abolition of a grade crossing, that would seem to be a necessary implication as to the power of the commission to be exercised within reasonable limits. No provision for the change of grade of tracks is made in the statute, but it would probably not

be contended that the commission might not require the company to elevate or lower its tracks for the purpose of avoiding a crossing at grade, and we see no reason by analogy why they might not be required to make a change laterally on ground provided for that purpose. Such change must be reasonable and without prejudice to the permanent physical conditions of the track, but within these limits such power seems to be implied in the general provisions of the statute relating to the subject of crossings. The 12th section of the Act of 1913 declares: "The commission shall also have exclusive power upon its motion or upon complaint, and after hearing as hereinafter provided.......to order any crossing aforesaid now existing or hereafter constructed at grade at the same or different levels to be relocated or altered or to be abolished according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission." The same section provides that "the compensation for damages which the owners of adjacent property taken, injured, or destroyed, may sustain in the construction, relocation, alteration or abolition of any such crossing......shall after due notice and hearing be ascertained and determined by the commission." The power thus conferred is very broad and includes the appropriation of private property for this specific purpose. In construing the statute, consideration must be given to the purpose of its enactment. Its object is not to fix rights between the litigants in such proceeding. The safety of the public is the object in view, and it should be so construed as to most effectually carry out this purpose, within the limitations imposed by the language employed by the legislature. We do not regard it as a forced construction to hold that inconsiderable changes in the location of the track or tracks of a railroad may be required by the commission in carrying out most effectively a plan for the abolition of a dangerous grade crossing. A similar conclusion was reached in

Danner v. N. Y. & H. R. R. Co., 213 N. Y. 117, under a statute giving to the railroad commission of New York less ample authority over the subject than exists in the Pennsylvania statute.

It may be that the amounts named in the order on final determination of the actual cost will be found to be inequitable, and if so made to appear, the Public Service Commission will doubtless be disposed to make such modification as equity suggests. The proportion of costs is still open for consideration in the discretion of the commission on the application of the appellant. A review of the whole case brings us to the conclusion that the order of the commission should be affirmed.

The appeal is dismissed at the cost of the appellant.