## Muller v. Philadelphia & Easton Electric Ry. Co. et al.

*Public Service Commission—Jurisdiction—Street railways — Elimination of grade crossings—Damages—Abutting property owner—Notice—Injunction.*

1. The Public Service Commission has exclusive jurisdiction to regulate grade crossings and to direct any changes or eliminations in connection with them.

2. To eliminate a crossing, it may direct that street railway tracks laid on one side of a highway may be taken up and laid on the other side.

3. If such an order is made without notice to the abutting land owner, his remedy is to apply for a rehearing by the commission, and if it fails to grant relief, to appeal to the Superior Court.

4. He has no standing to maintain a bill in equity for an injunction to restrain the removal of the tracks.

Hearing before the court on rule to show cause why a preliminary injunction should not be awarded as prayed for. C. P. Bucks Co., Oct. T., 1922, No. 3.

*Thomas Ross*, for plaintiff; *Swartley & Bunting*, for defendant.

*George Ross Hull*, Deputy Attorney-General, for intervening defendant.

SWARTZ, P. J., 38th judicial district, specially presiding, Aug. 25, 1922.— The plaintiff alleges that the defendant railway company is locating and constructing its tracks along the east side of the highway upon which his properties abut, and that such location and construction are without notice to him and without any authority of law. He asks for a restraining order.

The defendants answer that the proposed construction was ordered by the Public Service Commission in abolishing grade crossings, and in the lawful exercise of its powers; that the plaintiff is not entitled to the injunction prayed for.

### Findings of facts.

We shall not encumber the record with specific findings of facts, as this is not a trial before the court upon final hearing.

The relevant facts necessary to pass upon the application now before us are not in dispute.

The allegations in the bill that are not controverted, and the proofs submitted, show that a public road passed through Durham Township, a township of the second class; that the plaintiff's predecessor in title was the owner of lands on both sides of this highway; that the defendant railway company acquired from him a strip of ground adjoining the west side of the public road, upon which it constructed its tracks. The agreement showing the respective rights of the parties under this contract is in writing and is in evidence. The deed speaks for itself.

In 1911, the Commonwealth designated this public road one of the State road highway routes.

The State Highway Department is now engaged in improving this road along the plaintiff's premises.

To construct a proper State highway an additional width of roadway was needed in front of the plaintiff's properties on the east side of the highway. The plaintiff conveyed, for highway purposes, a strip of ground to meet the requirements of the State Highway Department. He received compensation for the grant so made. This deed or release of right of way is also in evidence and speaks for itself. There is no reference in the writing to any proposed shifting of the railway tracks from the west side of the State highway to the east side along the strip of ground so acquired from the plaintiff. The compensation to the plaintiff was made by the County Commissioners of Bucks

County, as required by law, for the strip of land so acquired for highway purposes.

The railway company in locating its tracks crossed the old public road, at grade, at two points—at least, in the improvement, location and construction of the State highway, two grade crossings were encountered.

Complaint was made to the Public Service Commission that these crossings were dangerous and should be eliminated from the highway. The Public Service Commission fixed a hearing. The County of Bucks, the State Highway Department, the Township of Durham and the defendant trolley company were parties to the proceeding. The plaintiff had no notice of the hearing, nor was he represented at the same. There is no evidence that he had any knowledge of the pending proceedings. This complaint and hearing were subsequent to the date of the conveyance made by the plaintiff for the strip of land on the east side of the highway.

The Public Service Commission, after hearing, abolished the two grade crossings and ordered the defendant trolley company to shift its tracks and roadbed from the west side to the east side of the State highway. No damages were awarded to the plaintiff, nor does it appear that the plaintiff's right to damages was considered by the commission.

That the plaintiff will sustain damages by the shifting of the tracks to the east side is shown by the evidence.

We shall not refer to any additional matters, but in our discussion we shall comment upon the admitted facts, so far as they may be relevant in passing upon the issues before us.

### Discussion.

The Public Service Commission made its order eliminating the two grade crossings and directed that the defendant's trolley road be shifted from the west side of the State highway to the east side thereof.

The defendant company started to make the change. The inspector and engineer of the State Highway Department located the side lines of the widened highway and planted the stakes for the roadbed of the shifted trolley line.

Whether the railway, when located and fully constructed in accordance with the stakes fixed by the said engineer, will occupy any part of the plaintiff's land beyond the eastern side line of the State highway, as widened, is in some doubt, but the weight of the evidence indicates that the trolley road in the new location was confined within the limits of the highway.

The State engineer called by the plaintiff so testified. The record, as it stands before us, will not support the awarding of a preliminary injunction, so far as it would be based upon the doubtful fact that any part of the trolley road, when relocated, will occupy part of the plaintiff's land beyond the eastern line of the widened State highway.

The defendant trolley company attempted to comply in all respects with the order of the Public Service Commission and with the location of the trolley tracks as designated by the State Highway Department.

All the parties represented at the hearing before the Public Service Commission approved its order or submitted to the same.

The plaintiff was not notified of the hearing, nor was he represented before the commission.

The State Highway Department, through the Commissioners of the County of Bucks, acquired for the State Highway Department from the plaintiff a strip of ground adjoining the east side line of the old public highway, to be used in widening the road and in constructing an improved State highway.

3 D. & C.

In this grant or release by the plaintiff there is no reference to any proposed shifting of the trolley tracks from the west side to the east side along the lands so acquired from the plaintiff for the construction of the improved State highway. Nor was the matter mentioned at that time in any conversation with him. In fact, the evidence does not disclose that any of the interested parties at that time contemplated the abolition of the two grade crossings in question.

The plaintiff, when the trolley line was originally constructed, granted to it the right to place the tracks on his ground outside of the lines of the old public road and adjoining it on the west.

He never gave his consent to the trolley company or to any other party, body or authority to locate the trolley tracks along the east side of the public road or along the east side of the widened State road.

The original consent given designates clearly that the trolley tracks were to be located on the west side of the highway.

That the taking of the strip of ground on the east side for the construction of a wider highway damaged his property cannot be gainsaid under the record before us.

That the shifting of the trolley tracks from the west to the east side will add further damages is shown in the evidence submitted. The statement of the actual facts and conditions surrounding the location of the tracks on the east side would seem to leave no room for doubt upon this matter.

The proximity of the tracks to the hotel building and the tenant-houses will necessarily depreciate the market value of the plaintiff's properties. Especially is this true because the tracks are in such close proximity to his hotel or public house maintained for the accommodation of strangers and travelers.

The laying of street railway tracks along a public highway in the country imposes an additional servitude upon the land for which the abutting land owner is entitled to compensation: Pennsylvania R. R. Co. *v.* Montgomery County Passenger Ry. Co., 167 Pa. 62.

Even if the land owner has no remedy where a State highway is involved, as contended by counsel, because the damage is *absque injuria*, still the owner should have an opportunity to be heard before his property is taken, injured or destroyed. No notice or hearing was accorded by the Public Service Commission before the order was made.

If the plaintiff and his witnesses had been heard, the order of the commission might have been modified. No one can tell what effect the statement of plaintiff's case might have had upon the commission. Perhaps some other order would have been devised less injurious to the plaintiff's premises. "The appropriation of property without notice to the owner is repugnant to every principle of justice:" Road in South Abington, 109 Pa. 118.

The Public Service Company Law, approved July 26, 1913, P. L. 1374, requires that notice be given to adjacent property owners when a hearing is held under an application to abolish a grade crossing.

The act, in article v, section 12, declares that the commission shall have exclusive power to order any crossing at grade to be altered or abolished upon its own motion or upon complaint after hearing, of which all parties in interest shall have due notice, including the owners of adjacent property.

This section also provides that the commission shall determine the compensation for the damages which the adjacent owners may sustain in the location or abolition of such crossing.

No doubt the members of the Public Service Commission assumed that the plaintiff, in granting the additional strip of ground, received compensation

not only for the land taken, but for any further burden that might be imposed upon his premises, by shifting the trolley tracks to the east side of the highway.

If the Public Service Commission adopted the view propounded by the Assistant Attorney-General, that the State Highway Department can shift the trolley tracks to the east side of this State highway without the plaintiff's consent and without compensation for the damages he sustained, then there might be some apparent excuse for the failure to give notice of the hearing to the plaintiff.

We cannot assume that the commission acted upon any such theory. Even if it were tenable, still the adjacent land owner was entitled to a hearing. All the more so because he was more deeply interested in trying to save his property from injury if he could.not be compensated in damages.

We also answer that the State Highway Department did not shift the tracks to the east side of the highway. This was done by the order of the Public Service Commission in pursuance of, and as a consequence of, the abolition of the grade crossings. The Public Service Commission had the exclusive power to abolish the grade crossings. The State Highway Department is not invested with any power to change grade crossings, except through the intervention of the Public Service Commission. Under the evidence, the shifting of the tracks was a necessary consequence when the crossings were abolished. There is no testimony before us to show how this result could have been averted. The commission was aware of the fact, and, therefore, ordered the shifting of the tracks to the east side. The order was not made by the State Highway Department, although it may have been instrumental in bringing about the order made by the commission.

We may admit that the Commonwealth can take property for highway purposes without making compensation in damages, unless the land owner can point to some statute conferring upon him the right to recover them. But in the case before us, if we are correct, the Public Service Commission, by its order, occasioned the damages under the Public Service Company Act, which clearly provides that the adjacent land owner, in the abolition of a grade crossing, shall be compensated, and the commission is required, in the first instance, to assess the damages sustained, if any. The State Highway Department has very extensive and far-reaching powers, as it should have, if it is to fulfill the purposes for which it was created. The appellate courts declare that the State Highway Department is the Commonwealth itself when it acts within the scope of its powers. The same is true of the Public Service Commission. We may add, great as the powers of the State Highway Department may be in appropriating property for its own use, still we do not see how it can appropriate the property of the plaintiff for the purpose of handing it over to the defendant trolley company. But, as we find, it was the Public Service Commission that by its order imposed the additional servitude on the plaintiff's premises.

If we are correct, then the plaintiff is entitled to compensation for the damages he will sustain if the trolley tracks are shifted to the east side. At least, he is entitled to a hearing before the Public Service Commission upon his claim.

We are also of the opinion that the Public Service Commission, upon due notice to the plaintiff, may take his property or impose a servitude upon it if such taking is reasonably necessary to eliminate the grade crossing in question. This the commission may do, although, under the law, the trolley

3 D. & C.

company could not locate its tracks along the east side of the highway without first obtaining the consent of the abutting land owner.

Such right of the commission follows from the exclusive power vested in it to abolish a grade crossing. The rule of law is well established that where the legislature grants the power to do an act, such grant, by implication, gives to the party the power to do all acts that are reasonably necessary to carry out the purpose of the statute.

This rule was applied in Erie R. R. Co. *v.* Public Service Commission, 76 Pa. Superior Ct. 170. In that case the commission, in changing a grade crossing, appropriated private property. The court said: "We may agree with the learned counsel that the authority to condemn land for railroad purposes is vested exclusively in the directors of the corporation, so far as the power of the railroad company is concerned; but the proceeding here is by virtue of a paramount authority—the police power of the Commonwealth. It is not the railroad company which takes private property to facilitate the carrying out of a crossing change. The Commonwealth acts in such cases and makes the necessary appropriation. . . . While there is no express provision in the Public Service Law which authorizes the commission to require the relocation of tracks to make practicable the abolition of the grade crossing, that would seem to be a necessary implication as to the power of the commission to be exercised within reasonable limits. . . . We do not regard it as a forced construction to hold that inconsiderable changes in the location of the track or tracks of a railroad may be required by the commission in carrying out most effectively a plan for the abolition of a dangerous grade crossing."

In construing the statute, consideration must be given to the purpose of the enactment. The object is not to fix rights between litigants in such proceedings. The safety of the public is the object in view, and it should be so construed as to most effectively carry out this purpose.

One all-important question remains for solution: Can this court grant any relief to the plaintiff, even if this Public Service Commission imposed a servitude upon his lands without following the requirements of the Public Service Company Act?

Notwithstanding the argument of the learned counsel for the complainant, we are still of the opinion that this court has no jurisdiction to interfere with the order made by the commission.

The granting of a preliminary injunction as prayed for is a direct interference with the order made by the commission. The injunction will arrest the doing of the act which the commission commanded that the defendant company should do.

This court has no jurisdiction to supervise the proceedings or orders of the Public Service Commission when it abolishes a grade crossing.

To the commission is given the exclusive power to eliminate a grade crossing, as well as the power to determine how it shall be done.

If the commission exceeded its power or proceeded in disregard of the requirements of the Public Service Company Law, the error must be corrected by the commission itself, and if it fails to do so and complainant deems himself aggrieved, he must take his appeal to the Superior Court.

This question is fully considered in The City of Erie *v.* Public Service Commission, 74 Pa. Superior Ct. 265: "The jurisdiction given [to the Public Service Commission] is exclusive. It was evidently the intention of the legislature that the whole subject of grade crossings be put under the control of the commission. . . . The subject of grade crossings is specifically given into the charge of the Public Service Commission."

The 12th section of article v also provides compensation for damages suffered by the owners of adjacent property, gives the commission the authority to prescribe terms and conditions upon which a crossing shall be constructed, relocated or altered or abolished, and the proportion of contribution to the expense thereof. Even as to damages, the initiative is with the commission.

If the equity court of this county can interfere with the proceedings before the commission, it might be so hampered that it would be deprived of the exclusive power vested in it as to grade crossings.

The commission has the sole jurisdiction, and if it exceeds its powers, the appellate courts alone can restrain or reverse its action. The interference by our equity court might raise such a conflict of authority as to defeat the purposes of the act in giving exclusive jurisdiction to the commission as to grade crossings.

The equity courts in the Common Pleas have from time to time attempted to interfere with the exclusive powers of the commission, but without success.

As early as Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114, the court held that equity courts could not pass upon questions within the exclusive jurisdiction of the Public Service Commission.

In Fogelsville Electric Co. v. Pennsylvania Power Co., 271 Pa. 237, a bill in equity was filed for an injunction against the defendant company. The injunction was granted restraining the erection of a certain pole line. Upon appeal, the decree was reversed, the court saying: "The powers of control or regulation, or whatever authority the court may in other days have possessed over these concerns, are supplanted by the Public Service Commission." The plaintiff had a full and complete remedy to prevent any encroachment or wrongful use of territory by defendant. Being a public service corporation, it could complain to the Public Service Commission.

The same rule applies to an individual who deems himself aggrieved by the acts of a public service corporation: Beetem et al. v. Carlisle Co., 273 Pa. 82. In that case the complainant filed a bill in equity for relief. He failed because his remedy was with the Public Service Commission.

The same ruling is found in McKeesport v. Pittsburgh Rys. Co., 72 Pa. Superior Ct. 435. Relief through a bill in equity was refused, and the complainant was referred to the Public Service Commission for redress.

It is argued that no objection is made by the defendant parties to the jurisdiction of the court in equity. But where there is no jurisdiction in the court, the parties cannot by agreement confer jurisdiction. This is not a case where suit is brought in equity, and the jurisdiction is in the law side of the Common Pleas. There is no power in this court to take cognizance of this controversy.

It is contended that we should issue a temporary injunction to prevent serious injustice. To do so would be in conflict with the authorities just cited.

We shall hold the case for a few days to preserve the *status quo*, so that the plaintiff, if he deems fit to do so, can prefer his complaint to the Public Service Commission. This was the action taken by the Supreme Court in the Fogelsville Case, 271 Pa. 237.

It may be well to consider what was said in Erie R. R. Co. v. Public Service Commission, 76 Pa. Superior Ct. 170, 179. In that case the Public Service Commission did not pass upon the question of damages for a small strip of ground taken. The court said: "As the State is responsible for the damages in the first instance under the statute, there seems to be no reason why the plan of the commission should not be carried into effect before the determination of the amount of damages, and this we think the statute authorizes.

3 D. & C.

Muller v. Philadelphia & Easton Electric Ry. Co. et al.

The compensation for damages accrues when property has been taken, injured or destroyed in the construction, relocation, alteration or abolition of any crossing. The injury must result before the right to damages arises. Otherwise, no order could take effect before the amount of damages was determined by the commission. The subject of damages is still within the powers of that body."

And now, Aug. 25, 1922, after hearing and due consideration of the arguments of counsel, the rule for a preliminary injunction is refused, but this order and decree is held and will not be entered for a period of ten days from this date, so that the complainant may be afforded an opportunity to apply to the Public Service Commission for the opening of the case for a rehearing, so far as his rights are involved, or for such other relief as he may see fit to seek before that body, the *status quo* to be preserved in the meanwhile.

From Calvin S. Boyer, Doylestown, Pa.