## Commonwealth v. Washington Township et al.

*Constitutional law—Public Service Commission Act of July 26, 1913—Suits by the Commonwealth—Grade crossing—Procedure—Road law.*

1. The Public Service Commission Act of July 26, 1913, P. L. 1374, is constitutional.

2. Where a complaint has been filed with the Public Service Commission by the State Highway Department, alleging that a grade crossing should be abolished, and a hearing is had on the complaint, of which due notice was given to a township in which the grade crossing was located, and the commission assesses the costs of the proceeding among the State Highway Department, the county and the township, and thereafter due notice of the assessment is given to the township, the liability of the township is fixed, and subsequently the township cannot object that it should have been made a formal party to the suit.

3. The Public Service Commission Act having conferred certain powers on the Public Service Commission, it has authority, under the police power, to abolish a grade crossing and compel a township to pay its share of the expense thereof, inasmuch as a township is merely a subdivision of the Commonwealth.

4. The Public Service Commission Act gives a right to any party affected to intervene, or to apply for a rehearing, or to appeal, and the remedies therein contained must be followed.

5. Suits should be brought against a township, and not against its supervisors.

Rule for judgment for want of sufficient affidavit of defense. C. P. Northampton Co., Nov. T., 1926, No. 106.

*George W. Woodruff,* Attorney-General, and *Charles P. Maxwell,* for complainant.

*Kent & Rockwell,* for defendants.

STEWART, P. J., Oct. 24, 1927.—This is a rule for judgment for want of a sufficient affidavit of defense. Although the suit was brought against a municipality, an agreement was filed, signed by the Deputy Attorney-General of the Commonwealth and the Supervisors of the Township of Washington, wherein it was agreed "that the same be submitted for the opinion of the court upon a rule for judgment for want of a sufficient affidavit of defense, the affidavit of defense heretofore filed in the said suit to be regarded by the court in every respect as if said Township of Washington (Northampton County), Jacob O. Fuls, Alvin Klein and Charles L. Brodt, supervisors, had been required by law to file the same or as if there were no exemption from the obligation of filing an affidavit of defense in the said suit." The affidavit of defense therein referred to raised certain questions of law and set out certain facts which the defendants conceived to be a defense. If we understand the matter, the procedure was a friendly effort to obtain the opinion of the court upon the liability of a township under the facts set forth in the pleadings. We have not thought it proper or found it necessary to apply technical rules to the affidavit of defense. The first position taken by the

defendants is that the suit was improperly brought by the Commonwealth. The Acts of April 7, 1870, § 3, P. L. 57, June 1, 1907, P. L. 383, and June 7, 1915, P. L. 876, contain ample authority for the Commonwealth, by the Attorney-General, to institute this suit and to his claim of 5 per cent. commissions. The proceedings in this case were instituted under the Public Service Commission Act of July 26, 1913, P. L. 1374, and its supplements. That the act is a proper exercise of the police power of the State and is constitutional appears from the discussions in many cases, two of which may be referred to, Relief Electric Light, Heat and Power Co.'s Petition, 63 Pa. Superior Ct. 1, and Com. ex rel. Attorney-General *v.* Benn, 284 Pa. 421. In the latter case, the syllabus is: "A Public Service Commission is an administrative arm of the legislature, for the services performed by it are predominately legislative in nature. . . . The Public Service Commission is not a 'court of record' within the meaning of the Constitution of Pennsylvania." The opinion of Mr. Chief Justice Moschzisker, while the question involved in that case is an entirely different one from the present question, nevertheless shows the power of the Public Service Commission, and that its orders, when properly made, have the force and effect of acts of the legislature. The question in the present case, therefore, is what was done by the Public Service Commission and did it act lawfully? In the statement of claim it is alleged that on March 7, 1918, the State Highway Department filed a complaint with the Public Service Commission, alleging that a certain grade crossing, where a State highway crosses the tracks of the Delaware, Lackawanna & Western Railroad in the Township of Washington, was dangerous and should be abolished. The railroad company filed an answer, admitting that the crossing was dangerous. Defendants herein were not made parties to the proceedings, but due notice of the time and place of the hearing before the Public Service Commission in the matter of the said complaint was given to the township supervisors. The third paragraph of the statement of claim avers that: "On April 1, 1918, due notice of the time and place of the hearing before the said Public Service Commission in the matter of the said complaint was given to the Supervisors of said Washington Township by the said Public Service Commission." The twenty-fourth paragraph of the affidavit of defense avers that: "The defendant admits the allegations in paragraph 3 of the complaint, but denies that such notice made the defendant a party to the proceeding inaugurated by said complaint, and the defendant further denies that notice of a hearing before a complainant and a respondent under Rule 2 of the Public Service Commission, as said rule was in force and effect at that time, made the defendant herein such a party to the said proceeding that an order could be made against it." Defendants contend that, admitting that they had notice of the hearing, they were never parties to the record and that a mere notice could not make them parties. The defendants set forth in their affidavit of defense the rules that were in force in 1918 as Exhibit "C," and contend that there is nothing in those rules that would compel the Township of Washington to take any part in the proceedings, and defendant further calls attention to the fact that on Feb. 28, 1921, the commission adopted the following rule, which is Exhibit "D:" "Whenever complaint is made that any grade crossing is dangerous and should be abolished, or that any overhead crossing, subway or underpass is dangerous or inadequate and requires reconstruction, relocation, alteration or abolition, the township, borough or city and the county concerned shall be named as parties; and shall be given due notice by the secretary of all hearings of such complaint." It is not contended that this last-quoted rule applies to the present proceeding, but the argument is that

its adoption shows that the Public Service Commission woke up to the fact that the method employed in the present procedure was illegal. No aid in the solution of this present matter can be gotten from the adoption of the rule of Feb. 28, 1921. We must consider the matter as it stood in 1918. The Public Service Commission was given certain powers by the Act of 1913, *supra*, and all persons, including the Township of Washington, defendant herein, are presumed to know what those powers were. In Paradise Township v. Public Service Commission, 75 Pa. Superior Ct. 208, the syllabus is: "A township in which is located a bridge carrying a state highway over the tracks of a railroad company which has been declared dangerous by the Public Service Commission and ordered to be changed, is a 'municipal corporation concerned,' within the meaning of the Public Service Company Law. The Public Service Commission in such case has authority to require the township to pay a portion of the cost of the alteration and relocation of the crossing." In his opinion, Linn, J., refers to the power of the commission as follows: "The general assembly declared that '. . . to the end, intent and purpose that accidents may be prevented and the safety of the public promoted,' P. L. 1409, the commission should have 'exclusive power to determine, order and prescribe in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing . . . in which any public highway may be constructed across the tracks or other facilities of any railroad corporation or street railway corporation, at grade, or above or below grade, . . .' P. L. 1409. It was given 'exclusive power . . . to order any crossing aforesaid now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered or to be abolished, . . .' P. L. 1409. The act provides that '. . . the expense of the said construction, relocation, alteration or abolition of any such crossing shall be borne and paid as hereinafter provided by the public service company or companies, or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid,' P. L. 1410. 'The term 'municipal corporation' as used in this act shall include all . . . townships, . . .' P. L. 1376." That case has been followed in a number of cases: Erie R. R. Co. v. Public Service Commission, 76 Pa. Superior Ct. 170, affirmed in 271 Pa. 409; Salem Township v. Public Service Commission, 76 Pa. Superior Ct. 374; and Marcus Hook Borough v. Public Service Commission, 87 Pa. Superior Ct. 210. In Knoll v. Harborcreek Township, etc., 86 Pa. Superior Ct. 423, where a grade crossing was abolished and a subway constructed, Trexler, J., said: "The Commonwealth may escape liability, but it may also assume it or impose it on the public service corporations or political subdivisions interested. There is nothing in the Constitution to prevent this." He then quoted from the act itself, and said: "Here is a legislative act which fixes a method whereby the cost of eliminating grade crossings shall be apportioned and the commission is designated to carry out the details of the scheme. The counties and townships are subdivisions of the State, are agencies of the government, and, barring constitutional prohibitions, are entirely subject to legislative control. When such apportionment is made, the extent of the liability is fixed." In Erie R. R. Co. v. Public Service Commission, 271 Pa. 409, the syllabus is: "Under the Act of July 26, 1913, P. L. 1374, as amended by the Act of July 17, 1917, P. L. 1025, in a proceeding to abolish a grade crossing, the Public Service Commission may order the municipality to pay the railroad company certain fixed sums and the latter to do

the work, furnish the material and bear the remaining expense necessary for the elimination of the crossing. The only requirement is that the order be just and reasonable. The law does not require the total expense to be pro-rated among the respective parties upon a percentage basis. The authority to abolish grade crossings is founded upon the police power of the State to protect life and property." It is perfectly plain, therefore, that the Public Service Commission had the power to abolish the grade crossing complained of and to impose 10 per cent. of the costs on this township. It is a question of power to impose the costs on the railroad company, or on the Common-wealth, or on the township after due notice of the hearing of the complaint. In the original act, in article 5, section 26, it is provided that "the commission may make such rules and regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties." Again, it is provided in article 6, section 1, that "The commission shall be governed by such rules, not inconsistent with this act, as shall be adopted and prescribed by the commission." Article 6, section 10, provides that the commission shall make a written finding, and section 13 provides that every final order of the commission shall be served upon each public service company affected thereby, and, further: "A certified copy of said order shall be mailed by registered mail to all other parties to the proceedings in which such order is issued, or their respective attorneys; but the failure of any public service company or of any party to the proceedings to receive such copy shall not prevent the said order from being conclusive and taking effect on the date specified therein, in accordance with its terms." Section 14 gives the right to any party affected by the finding to apply for a rehearing, and the Acts of June 3, 1915, P. L. 779, and July 11, 1917, P. L. 808, give a party a right to appeal within thirty days. In the present case, the record shows that the Public Service Commission, on June 10, 1918, made a final order and by the terms of this order abolished the grade crossing, and by the terms of the order imposed 10 per cent. of the costs on the Township of Washington, defendant herein. On June 11, 1918, a certified copy of the said order was sent by registered mail to the Supervisors of the Township of Washington. The record also shows that the order of June 10, 1918, was amended by an order made May 26, 1919, and that a certified copy of said amended order was also sent to the Supervisors of the Township of Washington by registered mail. The record also shows that after the township had neglected to pay its proportion of the bill for the cost of abolishing the grade crossing, on April 14, 1925, the Public Service Commission made an order directing the township to pay the Department of Highways the sum of $2779.36, and that on April 17, 1925, a certified copy of the last-mentioned order was sent to the supervisors. That item constituted the proportioned cost of the abolition of the grade crossing to be paid by the defendants. The record also shows that on Feb. 8, 1922, notice was given to the supervisors of said township of a hearing before the Public Service Commission upon the question of damages for the taking of land for the right-of-way for the new road. That hearing was not had, and, on July 11, 1922, notice of a hearing to be had on July 19, 1922, was given to the supervisors of said township. On Aug. 21, 1922, the Public Service Commission made an order, ordering the Township of Wash-ington to pay to the County of Northampton $82.50, and, on Sept. 6, 1922, a certified copy of that order was sent by registered mail to the Supervisors of the Township of Washington. The receipt of all the above-mentioned certified copies of orders by the supervisors is admitted, except the affidavit of defense contains no reference at all to paragraph 9 of the statement, which alleges

that a certified copy of the order of June 10, 1918, was mailed to the supervisors.

It cannot be doubted but what the defendants had full notice of every step in this procedure. Their entire reliance is based on the fact that the township technically was not a party to the proceedings. Where liability is imposed by an act of assembly such as we have in the present case, and where the Public Service Commission acted in strict compliance with all the terms of the law, the Township of Washington cannot escape payment of its debts. As we have shown above, they had notice of the procedure. The law gave them an opportunity to intervene, and if they were dissatisfied with the award, they had a right to appeal to the Superior Court, but they did absolutely nothing in the matter. We have not taken into consideration at all either the fact set forth in the affidavit of defense, that they were without counsel for a part of the time, nor that their counsel, when they did appear, only appeared for a special purpose, and that their appearance was not a general but a special one. Neither of these considerations affects the principle applicable to this case. It is also sought to interpose as a defense to the present proceeding that the original complaint proposed to eliminate a grade crossing 3000 feet south of the Martin's Creek Junction, but that the Public Service Commission undertook to eliminate, at the expense of the Township of Washington, three grade crossings for the benefit of the railroad company. It is, perhaps, unfortunate that there was any reference in the pleadings made to the three additional crossings. We find in the affidavit of defense the answer of the railroad company, Exhibit "A." In section $E$ of that answer they aver that those three crossings should be abolished, but they say nothing about connecting the expense with that of the crossing which was 3000 feet south of the Martin's Creek Junction. The Public Service Commission, in its report of June 10, 1918, by way of recital, referred to these three other grade crossings as follows: "In connection with this improvement, but not a part of this complaint, it is proper to state that at a point about 1000 feet north of the proposed crossing of the highway under the railroad, a township highway intersecting the State highway also crosses this railroad at grade, and, continuing northward within a distance of 3000 feet, crosses another branch of respondent's line, running to Bath, twice, and thence continues on to Ackermanville. The respondent railroad company has made arrangements whereby this township highway is to be relocated and connected with the proposed relocated State highway, just north of the point where it crosses underneath the railroad at Pen Argyl Creek, thereby abolishing three grade crossings. The entire cost of the relocation of this township highway, including the reconstruction thereof and the payment of all damages to private property owners, has been assumed by the railroad company." It would seem as if that question would be sufficient to eliminate those three grade crossings from the present suit, but the record further shows (see Exhibit "B" of defendants' affidavit of defense) that the railroad company proceeded to have those three grade crossings eliminated in a separate proceeding, and the Public Service Commission, by an order made June 1, 1920, ordered their abolition at the cost and expense of the railroad company.

It plainly appears from the affidavit of defense that neither of the items for which the present suit is brought had any connection with the cost or expense of abolishing the three additional grade crossings. Again, it is contended that if the orders of the Public Service Commission are sustained, the township will have to raise money by a new method of taxation, contrary to

the Constitution. The authorities quoted above amply demonstrate that townships are not distinct entities. They are the mere agents of the State, and are in all respects subject to the superior rights of the Commonwealth. As Judge Trexler said in Knoll v. Harborcreek Township, *supra:* "The Commonwealth may escape liability, but it may also assume it or impose it on . . . political subdivisions interested." Again, he said: "When such apportionment is made, the extent of the liability is fixed." A township has no vested rights in its revenues or funds. As agents of the State, they are mere collecting agents, and must respond when their liability is fixed. The same question arose in the case of State of · Maryland v. Baltimore & Ohio R. R. Co., 3 Howard, 534. The syllabus of that case is as follows: "The State of Maryland, in 1836, passed a law directing a subscription of $3,000,000 to be made to the capital stock of the Baltimore and Ohio Railroad Company, with the following proviso: 'That if the said company shall not locate the said road in the manner provided for in this act, then, and in that case, they shall forfeit $1,000,000 to the State of Maryland for the use of Washington County.' In March, 1841, the State passed another act repealing so much of the prior act as made it the duty of the company to construct the road by the route therein prescribed, remitting and releasing the penalty, and directing the discontinuance of any suit brought to recover the same. The proviso was a measure of State policy, which it had a right to change if the policy was afterwards discovered to be erroneous, and neither the commissioners, nor the county, nor any one of its citizens acquired any separate or private interest under it which could be maintained in a court of justice." In the brief for the plaintiff in error, the following quotation is interesting: "The county enjoyed great advantages before the construction of this road. One of the greatest thoroughfares in the country (the great national road) passed for fifty miles through her territory. Twenty four-horse stage coaches filled with passengers daily passed over the road, and it was constantly lined with immense wagon-teams, traveling to and from the great west. All these people and horses had to be fed. It was a most profitable market for our farmers. Houses were built all along the road to accommodate the custom. It is now all gone. The farmers lose the profits of their provender and marketing; the whole country feels the depression; and the houses which were a few years ago comfortable inns and profitable to their proprietors are going to decay, a dead loss. The million we seek to recover can never indemnify the county for the injury she has sustained." Mr. Chief Justice Taney, in an elaborate opinion, held that there was no contract entered into and that no constitutional provision was violated. See, also, opinion of Mr. Chief Justice Fuller in Essex Public Road Board v. Skinkle, 140 U. S. 334, to same effect. These authorities conclusively show that there was no taking of the township's property by the apportionment of the damages in this case and no constitutional rights of the defendant have been violated. Throughout this opinion we have spoken of "defendants," and while the point was not raised, we think it was unnecessary to make the supervisors parties or to substitute a new supervisor when one died, as was done herein. The Act of April 15, 1834, § 3, P. L. 538, is as follows: "To sue and be sued as such by the corporate name of the county of ————, or the township of ————, as the case may be." Section 1395 of "The General Township Act" of July 14, 1917, P. L. 840, provides: "In all suits against a township, process shall be served upon, and defense made by, the township commissioners or supervisors." That act merely refers to the service of process. Suits should be brought as heretofore. This suit should be brought against the township, not against the

Commonwealth v. Washington Township et al.

supervisors, and judgment will only be entered against the former in this proceeding.

And now, Oct. 24, 1927, the defendants' questions of law are all overruled, and judgment is entered in favor of the plaintiff and against the Township of Washington for want of a sufficient affidavit of defense for the sum of $3799.81.

From Henry D. Maxwell, Easton, Pa.