Township of Horsham, Appellant, *v.* Public Service Commission.

Phila. R. T. Co., Appellant, *v.* Public Service Commission.

Argued October 4, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*J. William Ditter,* for Township of Horsham, appellant.—No duty of repair rested on the township: Cheltenham Twp. v. Phila. R. T. Co., 292 Pa. 384; Erie R. Co. v. P. S. C., 77 Pa. Superior Ct. 196; Com. v. Newton Twp., 276 Pa. 172.

*George H. Huft* and *Coleman J. Joyce,* for Philadelphia Rapid Transit Company, appellant.—When the State, acting under the State Highway Act, took over the turnpike, it took over all and every part thereof including the obligation to maintain and repair: Erie

R. R. Co. v. Public Service Commission, 77 Pa. Superior Ct. 196.

*John Fox Weiss,* Counsel for the Public Service Commission, and with him *Daniel H. Kunkel* and *E. Everett Mather, Jr.,* Assistant Counsel for appellee.— The commission is without power to adjudicate with respect to contractual obligations for maintenance or repair of crossings: Pittsburgh & L. E. R. C. v. McKees Rocks Boro., 287 Pa. 311; Penna. R. Co. v. Penna.-Ohio Elec. Co., 296 Pa. 40.

The township is a municipality concerned and can be assessed a reasonable share of the cost of repairs: Pittsburgh & L. E. R. Co. v. Public Serv. Commission, 75 Pa. Superior Ct. 282; Paradise Township v. Public Service Com., 75 Pa. Superior Ct. 208; Salem Township v. Public Service Commission, 76 Pa. Superior Ct. 374.

OPINION BY KELLER, J., December 12, 1929:

These appeals are from an order of the Public Service Commission directing the Philadelphia Rapid Transit Company to repair the grade crossing over its tracks, where the Doylestown Pike, a state highway taken over and improved by the State Department of Highways and under its exclusive authority and jurisdiction, is joined by Moreland Avenue, a township road; and imposing on the Township of Horsham part of the cost of such repair.

We have no doubt of the authority of the Commission under the broad powers given it in Section 12 of Article V of the Public Service Company Act and its amendments, to assume jurisdiction of a complaint as to the unsafe condition of a grade crossing, such as was filed in this proceeding, and to order it to be repaired so as to render it safe and passable for public travel "to the end, intent and purpose that accidents may be

prevented and the safety of the public promoted;" and to "determine, order and prescribe" the terms and conditions of its repair and maintenance by those agencies responsible for its continued existence and up-keep; but any attempt to impose a part of the cost of reconstruction, repair and maintenance on a municipal corporation, or quasi corporation, or agency, not directly charged with nor responsible for the care and keeping of the crossing, must be limited to the cases where such authority is expressly given by Section 12 aforesaid.

A reading of that part of the section shows that this power and authority was given the Commission in connection with the grant of authority to "order any crossing aforesaid now existing or hereafter constructed at grade, or at the same or different levels, *to be relocated or altered or to be abolished;*" in such case, "compensation for damages which the owners of adjacent property, taken, injured, or destroyed, may sustain in the construction, relocation, alteration, or abolition of any such crossing ...... shall, after due notice and hearing, be ascertained and determined by the Commission; and such compensation as well as the expense of the said construction, relocation, alteration or abolition of any such crossing, shall be borne and paid, as hereinafter provided, by the public service company or companies or *municipal corporations concerned,* or by the Commonwealth, either severally or in such proper proportions as the Commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid."

The cases in which we have held municipal agencies, not directly charged with any responsibility in the maintenance of such crossings, liable to pay part of the expense of the improvement all involved a relocation, alteration or abolition of the crossing, which was

calculated to prove of special benefit to the county, township or municipality ordered to contribute to its cost, and therefore justified imposing on them part of the expense, even though they were not responsible for the care of the highway of which the relocated crossing formed a part. Such were, Pittsburgh B. & L. E. R. Co. v. P. S. C., 71 Pa. Superior Ct. 15; Paradise Twp. v. P. S. C., 75 Pa. Superior Ct. 208; Salem Twp. v. P. S. C., 76 Pa. Superior Ct. 374; Erie R. R. Co. v. P. S. C., 76 Pa. Superior Ct. 170; Erie R. R. Co. v. P. S. C., 77 Pa. Superior Ct. 196, although there it was held that an improvement which was virtually the relocation of a state highway could not be so apportioned; Lancaster County v. P. S. C., 77 Pa. Superior Ct. 495; Schuylkill Co. v. P. S. C., 77 Pa. Superior Ct. 504; Lehigh Valley R. Co. v. P. S. C., 82 Pa. Superior Ct. 233; Ligonier Valley R. Co. v. P. S. C., 83 Pa. Superior Ct. 502, etc. The special concern or interest of such municipal corporations in the improvements thus contemplated is well stated by Judge LINN in the opinion in Paradise Twp. v. P. S. C., supra; "The residents of this township require this bridge to enable them to cross the tracks of the railroad company. The new bridge removes the elements of danger under which the old bridge was used; it makes provision for pedestrians which the other lacked; substitutes a much wider driveway for one conceded to be too narrow; removes the danger incident to the vehicular traffic and street railway operation over the narrow bridge built at right angles to the general course of the highway. These residents have direct and positive concern or interest in the removal of the danger found by the commission to exist and in the enjoyment of the proposed improvement. The words 'concern' and 'interest' are classified by lexicographers as synonyms; they are to be construed as used in the statute in their popular

well known sense. Residents of this township are as much concerned or interested in the safety of travel over this bridge as they would be if it were a township road constructed and maintained by the township.''

The repairs ordered by the Commission in the present case were not an improvement of the character contemplated by the language of the act above referred to. They are in no sense a relocation, alteration or abolition of a grade crossing. They amount to nothing more than the resurfacing of a roadway where it is crossed by a street railway track, so as to make it safe and passable for travel, and furnish no ground for an allocation of any part of its cost against any municipal corporation not chargeable with its maintenance and repair.

Doylestown Pike forms one of the routes of our State highway system. It was taken over by the State Highway Department under the provisions of Section 9 of the Sproul Act (Act of May 31, 1911, P. L. 468) and thereupon became a state highway, free of tolls, and was thereafter and still remains under the exclusive authority and jurisdiction of the Department of Highways. The Township of Horsham was not responsible for its condition, maintenance or repair while it was being operated as a toll road, nor is it so responsible since the Department of Highways took over control of it as a State highway: Cheltenham Twp. v. Phila. R. T. Co., 292 Pa. 384. After a road is taken over by the Department of Highways as a state highway, the Commonwealth alone is responsible for its maintenance and repair as a road, and succeeds to all outstanding contracts relative thereto: Com. v. Newton Twp., 276 Pa. 172. The crossing to be repaired is located wholly on the Doylestown Pike; Moreland Avenue runs into, but does not cross the Doylestown Pike.

We are, therefore, of opinion that the Commission erred in imposing any part of the expense of repairing this crossing on the Township of Horsham.

(2)   At the time the Commonwealth took over the Doylestown Pike as a State highway under Section 9 of the Sproul Act, the Philadelphia Rapid Transit Co. was occupying part of the chartered width of the turnpike as the right of way for a street railway line which it had leased and was operating.   This line had been so located by agreement between the turnpike company and a predecessor of the Rapid Transit Co.   The original agreement provided for a leasing by the turnpike company to the street railway company of all its property, rights and franchise, but the parties, probably fearing the legality of this step, modified this by an agreement constituting the street railway company the agent of the turnpike company to collect tolls on said turnpike; but the street railway company thereafter remained obligated as between it and the turnpike company to keep the roadway of the turnpike in condition and repair.   In the agreement of sale between the turnpike company and the Commonwealth, acting through the State Highway Commissioner, the turnpike company agreed to convey the said turnpike to the Commonwealth, and pursuant thereto executed a deed for its right, title and interest therein to the Commonwealth.   Appellant erroneously refers to this deed as conveying to the Commonwealth the fee in the road. The turnpike company never had a fee in the land occupied by the road, and could only convey its right to construct and maintain a turnpike road thereon.   The street railway company and the Rapid Transit Company also executed a deed poll surrendering to the Commonwealth all their right to operate a turnpike road.   Both of these conveyances were expressly made subject to the right of way of the street railway company as then existing and used and enjoyed by it and

its lessee, the Rapid Transit Company. In the deed poll of the street railway company and the Rapid Transit Company surrendering the right to operate the turnpike there was included as part of the consideration "the release by the Commonwealth of all and every duty or obligation on the part of the parties of the first part or either of them to keep and maintain said turnpike road about to be conveyed, as aforesaid, in good order and repair."

The Rapid Transit Company now contends that this clause relieves it of the duty and obligation of maintaining the bed or roadway of any crossings over its right of way. We do not so understand it.

The release, in the light of the circumstances above referred to, must be understood as restricted to the duty then resting on the street railway company, as agent of the turnpike company, and its lessee, the Rapid Transit Company, to maintain in good order and repair the turnpike road proper, that is, so much of it as was being used, or might be used, as a roadway for the passage of vehicles and general traffic; it certainly had no relation to the right of way used by the street railway company and its lessee for the operation of a street railway line. These conveyances imposed no duty on the Commonwealth to repair and maintain the track of the street railway company and its lessee, the Rapid Transit Company, although located on part of the chartered width of the turnpike company. That duty devolves on the Rapid Transit Company, operating the street railway line. The turnpike road proper —that is, all of its width not occupied by the street railway right of way—must be maintained and cared for by the Commonwealth; but it was never pretended that the Commonwealth had any duties to perform with reference to the repair and maintenance of the street railway track. It follows that the usual duties and obligations resulting from such a situation remain on the

street railway company and its lessee, who between them, have assumed them. The Rapid Transit Company must keep its track, located on its right of way, in repair; and where this is crossed by a public road it must keep the space between its rails and for eighteen inches on each side of them in safe and passable condition and repair, as a duty or obligation incident to its operation of the street railway line, and having no relation to its former duty of maintaining the turnpike road in good order and repair, which now devolves on the Commonwealth. The rest of the crossing, except the space above mentioned must be kept in good, safe and passable condition and repair by the Department of Highways, as having sole and exclusive authority and jurisdiction over the State highway, subject only to the right of way aforesaid. It follows that the appeal of the Philadelphia Rapid Transit Company must be dismissed.

Appeal No. 266, October Term, 1929—Township of Horsham, appellant. The order is reversed in so far as it requires the Township of Horsham to pay any part of the cost of the work required to be done.

Appeal No. 269, October Term, 1929—Philadelphia Rapid Transit Company, appellant. The appeal is dismissed at the costs of the appellant.

On petition for a reargument the court filed the following opinion refusing the reargument.

---

PER CURIAM, January 14, 1930:

Petition for re-argument is refused. We had given consideration to the two cases specially referred to in the petition. Neither of them is in conflict with the opinion filed.

Pittsburgh & Lake Erie Ry. Co. v. P. S. C., 75 Pa. Superior Ct. 282, was not concerned with an ordinary grade crossing but with an overhead bridge. The re-

pairs ordered amounted to a virtual rebuilding or reconstruction of the bridge. The Borough of McKees Rocks was immediately concerned and directly interested in its maintenance. This may be seen by examining the case of Pittsburgh & Lake Erie Ry. Co. v. McKees Rocks, 287 Pa. 311, where the railway' company was permitted to recover the money which it had expended in the rebuilding of the bridge, pursuant to the commission's order, from the borough, by reason of a contract made when the bridge was built imposing its maintenance on the borough. In that case the Supreme Court construed the decision of this court in 75 Pa. Superior Ct. 282, as follows: "As shown by P. & L. E. R. R. Co. v. Pub. Serv. Com., 75 Pa. Superior Ct. 282, 288-9, the commission has power to require those *immediately concerned* to maintain an existing elevated crossing, or bridge, and to contribute towards the cost of such maintenance in the manner and proportions ordered by that body."

Schuylkill Railway Co. v. P. S. C., 268 Pa. 430, (affirming 71 Pa. Superior Ct. 204) was a case concerned with the relaying of a grade crossing formed by the tracks of a railroad and a street railway respectively. Both companies were immediately concerned and, in the absence of a special agreement between them, directly responsible for the maintenance of the crossing. But the commission imposed all the expense of relaying the crossing with new rails on the Schuylkill Railway Co. because of an agreement between the two companies that it should bear the expense of maintenance, and the Supreme Court affirmed.

There is nothing in either case to support the contention that the cost of repairing an ordinary grade crossing can be imposed on any corporation or municipality not immediately concerned in or responsible for its maintenance. That was the question before us, and

376

which we decided in the negative. The opinion does not affect the power of the commission to allocate the cost of the reconstruction, repair and maintenance of a structure or crossing not at grade erected in *abolition* of a grade crossing.