# Pittsburgh & Lake Erie Railroad Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission—Railroad crossings—Alterations—Costs—Assessment of costs—Powers of the Public Service Commission.*

On a complaint to the Public Service Commission as to the dangerous character of a bridge over the tracks of a railroad company, an order by the commission which requires the respondent to "make such necessary and proper repairs to said bridge as to render it safe to meet the requirements of the traveling public and in a manner satisfactory to the commission, the nature and extent of such repairs to be reported in detail to the commission immediately upon completion thereof," is so indefinite and uncertain in its provisions as to be unreasonable and not in conformity with law. There is nothing in the report showing what repairs are necessary or proper or what will be satisfactory to the commission.

In a proceeding before the Public Service Commission relative to the dangerous condition of a bridge over the tracks of a railroad

company, the commission has exclusive jurisdiction to determine the just and reasonable manner in which a public highway may be constructed across the tracks or other facilities of a railroad. The expense in such case must be borne by the public service company or municipal corporations concerned, or the Commonwealth, in such proportion as the Public Service Commission may determine. In the assessment of the costs the jurisdiction of the commission is not limited to the public service companies, but attaches to all the municipal corporations concerned.

Any agreement between a railroad company and a municipality providing for the maintenance of a crossing over the tracks and facilities of the former must be held to have been made subject to the lawful exercise of the police power, which at any time might be invoked and require that the railroad company be called upon to maintain the bridge notwithstanding the agreement of the municipality to do so.

Argued November 11, 1920.  Appeal, No. 81, April T., 1921, by the Pittsburgh & Lake Erie Railroad Company, from order of the Public Service Commission, Nos. C. 3150, 3228 and 3229, in the case of the Pittsburgh & Lake Erie Railroad Company v. The Public Service Commission of the Commonwealth of Pennsylvania, on appeal, and the Pressed Steel Car Company and Carnegie Steel Company, intervening appellees.  Before OR-LADY, P. J., PORTER, TREXLER, KELLER and LINN, JJ. Reversed.

From the record it appeared that the Pressed Steel Car Company and Carnegie Steel Company filed a complaint before the Public Service Commission alleging that the highway bridge over the tracks and right of way of the Pittsburgh & Lake Erie Railroad Company, known as O'Donovan's Bridge, was out of repair and closed to traffic; that the complainants have large manufacturing plants in Stowe Township, which lies immediately west of the Borough of McKees Rocks, in which the bridge is situated, and that by reason of their inability to transport a portion of their product over the bridge by automobile truck and by reason of the ina-

bility of other persons to use the bridge, the complainants, as well as the residents of McKees Rocks and Stowe Township, have suffered great inconvenience. The complaint joined as defendants the Pittsburgh & Lake Erie Railroad Company, the Borough of McKees Rocks, the Pittsburgh Railways Company and the receivers thereof.

The defendants filed separate answers denying liability on their part for the repair of the bridge and the Pittsburgh & Lake Erie Railroad Company attached to its answer an agreement with the borough, dated March 6, 1907, which provided that the railroad company should erect, at its own expense, the bridge over its tracks and right-of-way and that the borough, upon the acceptance of the bridge, should assume the repairs thereof.

The Public Service Commission held several hearings in connection with the complaint and made an investigation of the bridge on its own behalf. Subsequently it made the following order:

"This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had, the commission finds and determines that the existing crossing above grade over the tracks of the Pittsburgh & Lake Erie Railroad Company in the Borough of McKees Rocks, Allegheny County known as 'O'Donovan's Bridge' is dangerous to the travelling public and the repair thereof necessary for the safety, accommodation and convenience of the public;

"Now, to wit, August 10, 1920, it is ordered: That the complaint in this case be and the same is hereby sustained and that the Pittsburgh & Lake Erie Railroad Company, respondent, promptly make such necessary and proper repairs to said bridge as to render it safe to meet the requirements of the travelling public and in a manner satisfactory to the commission; the nature

and extent of such repairs to be reported in detail to the commission immediately upon completion thereof."

*Error assigned,* among others, was the order of the commission.

*John J. Heard,* and with him *George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellant.—There was no duty on the part of the railroad company to maintain the crossing: Great Bend Township v. D., L. & W. R. R. Co., 67 Pa. Superior Ct. 95.

The obligation of the borough to maintain the crossing was primary and not secondary: Aiken v. Phila., 9 Pa. Superior Ct. 502; Dillon on Municipal Corporations, 5th ed., sections 1723-1730; Brown v. Towanda Borough, 24 Pa. Superior Ct. 378; Illinois Central R. R. Co. v. City of Bloomington, 76 Ill. 447; Northern Central R. R. Co. v. Baltimore, 46 Maryland 425; Brooke v. Phila., 162 Pa. 123.

The order of the commission was indefinite and not in conformity with law: B. & O. R. R. Co. v. Public Service Commission, 66 Pa. Superior Ct. 403; Pennsylvania R. R. Co. v. Public Service Commission, 69 Pa. Superior Ct. 404.

*W. S. Dalzell,* of *Dalzell, Fisher & Dalzell,* for intervening appellees.—The duty was on the railroad company to maintain the bridge: 3 Elliott on Railroads (second edition), section 1092; Reading v. Traction Company, 202 Pa. 571; Phœnixville v. Phœnix Iron Co., 45 Pa. 135; P. R. R. v. Duquesne Borough, 46 Pa. 223; Chester v. R. R. Co., 140 Pa. 275; P. R. R. Co. v. Borough of Irwin, 85 Pa. 336.

The railroad company could not shift the burden of maintaining the bridge upon the borough: Somerset and Stoystown Road, 74 Pa. 61; Palo Alto Road, 160 Pa. 104; Curtis v. P., McK. & Y. R. R. Co., 250 Pa. 480;

Burritt v. City of New Haven and the N. H. & H. R. R. Co., 42 Conn. 174.

*Berne H. Evans*, and with him *John Fox Weiss*, for the Public Service Commission.—The commission had jurisdiction to order the repairs to the bridge: Borough of Franklin v. The Public Service Commission, 73 Pa. Superior Ct. 294; Northern Pacific Ry. Co. v. State of Minnesota, 208 U. S. 584; State v. Northwestern Pacific Ry. Co., 98 Minn. 429, 108 N. W. 269; State v. St. Paul M. & M. Ry. Co., 98 Minn. 380, 109 N. W. 261.

OPINION BY LINN, J., December 13, 1920:

On March 27, 1920, the car company and the steel company joined in a complaint to the commission against the Borough of McKees Rocks, the receivers of the Pittsburgh Railways Company, and the Pittsburgh and Lake Erie Railroad Company, alleging that a bridge in the borough—part of a public highway—extending over the tracks of the railroad company was out of repair and closed to use by vehicles to the detriment of complainants and the public generally. They asked appropriate relief by the commission.

The record shows that the bridge—known as O'Donovan's bridge—was constructed by the Pittsburgh and Lake Erie Railroad Company in 1904 pursuant to a contract made by the railroad company and the borough, March 6, 1902. This contract provided for the abolition of a grade crossing over the railroad tracks by the vacation of a public road; the railroad company agreed to provide the bridge to take the place of the vacated road. The contract also provided that when the bridge was completed by the railroad company, it should become the property of the borough and be by it maintained. The bridge was accepted by the borough in 1904, and the grade crossing was abolished. We are not required by this record to pass upon complainant's suggestion that the vacation of the public road was invalid. In 1903,

the borough made a contract with McKees Rocks and Allegheny Street Railway Company granting it the right to construct its tracks on the bridge and to operate its cars there in consideration of the payment to the borough by the street railway company of the sum of $5,000 and the agreement of the company thereafter to keep the bridge in repair.

The receivers of the Pittsburgh Railways Company filed an answer alleging that the McKees Rocks and Allegheny Street Railway Company "was operated by the Pittsburgh Railways Company and by the receivers of the railways company under an operating agreement terminable upon thirty days' notice"; and that pursuant thereto on January 23, 1920, the receivers gave notice of their termination of the agreement on March 1st; after which date they had "not exercised any control or supervision of the tracks on O'Donovan's bridge." The McKees Rocks and Allegheny Street Railway Company was not made a party to the proceeding. Hearings were had by the commission and on August 10, 1920, the order complained of was made.

We agree fully that the evidence justifies the conclusion of the commission that the bridge "is dangerous to the traveling public and the repair thereof necessary for the safety, accommodation and convenience of the public." We must, however, reluctantly sustain appellant's contention that the order is so indefinite and uncertain in its requirements as to be unreasonable in a legal sense. The entire report or order of the commission is set forth by the reporter. A respondent is ordered to make (1) such necessary and proper repairs to said bridge as to render it (2) safe to meet the requirements of the traveling public and (3) in a manner satisfactory to the commission, (4) the nature (5) and extent of such repairs to be reported in detail to the commission (6) immediately upon completion thereof. There is nothing in the report or order showing what repairs are

288 PITTSBURGH & L. E. R. R. CO., Appel., *v.* PUB. SER. COM.

Opinion of the Court. [75 Pa. Superior Ct.

necessary or proper, or what will be satisfactory to the commission.

The difficulties in the enforcement of such an order are too obvious for statement here. They may all be avoided by a specification of what shall be done to the bridge, incorporated in the order or identified in some other way.

As the case must go back, we should perhaps refer briefly to two other considerations presented by appellant.

1. It is contended that the commission made the order under a misapprehension of its power and duty in the premises. This contention is based upon a statement in the record made by the commissioner who took the evidence. He said: "The only party before us over whom we have jurisdiction is the respondent railroad company, being a public utility. We dislike to make an order against the railroad company and sent Dr. Snow, the head of our engineering department to Pittsburgh to see if some arrangement could not be made between the parties. If the commission makes an order to repair this bridge, it will be made against the railroad company."

We can find nothing in the record supporting the conclusion that "the only party before us over whom we have jurisdiction is the respondent railroad company, being a public utility." It does not appear that any party to the proceeding objected that it was not properly before the commission and it cannot be denied that the commission has jurisdiction—exclusive jurisdiction—of the subject-matter of the complaint. The averment was that the crossing over the railroad tracks—i. e., the bridge —was out of repair. Article V, section 12, of the act, which should be read in its entirety, specifically confers exclusive jurisdiction—"......exclusive power to determine, order and prescribe......the just and reasonable manner.......in which any public highway may be constructed across the tracks or other facilities of any rail-

road corporation......at grade or above or below grade; and to determine, order and prescribe the terms and conditions of installation and operation, maintenance and protection of all such crossings which may now ......be constructed including the stationing of watchmen thereat or the installation and regulation of lights, block, or other system of signalling, safety appliances, devices, or such other means or instrumentalities as may to the commission appear reasonable and necessary, to the end, intent and purpose that accidents may be prevented and the safety of the public promoted," P. L. 1409. Further on, power is given to require "any crossing aforesaid now existing.......to be relocated or altered or to be abolished......" P. L. 1409. The expense of such alteration or abolition "shall be borne and paid, as hereinafter provided, by the public service company or companies, or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid," P. L. 1410. Certainly the power to alter or abolish any crossing includes the power to have one repaired. The Borough of McKees Rocks was a party to the proceeding and appeared before the commission. If any other municipal corporation is alleged to be concerned in the improvement found necessary, the commission has power to bring in such municipal corporation. If it find that any municipal corporation is concerned in the improvement, it has the power to require a contribution to the cost thereof, if the facts justify it. See Appeal of Paradise Township, 75 Pa. Superior Ct. 208.

2. Appellant also contends that it is exempt from liability to repair the bridge by its contract with the borough. At this stage of the proceeding, we need only suggest that such contracts are generally held to have been made subject to the implied term that the lawful

exercise of the police power might take place at any time and might require that the railroad company then be called upon to maintain the bridge notwithstanding the borough's agreement to do so. See R. R. Co. v. Bristol, 151 U. S. 556; N. P. R. Co. v. Duluth, 208 U. S. 583; C. M. & St. P. R. Co. v. Minneapolis, 232 U. S. 430; M. P. R. Co. v. Omaha, 235 U. S. 121; D. & R. G. R. Co. v. Denver, 250 U. S. 241; N. P. R. Co. v. Puget Sound, etc., R. Co., 250 U. S. 332.

The order of the commission is reversed and the record is remanded for further proceedings not inconsistent with this opinion.

