# Director General of Railroads *v.* West Penn Railways Co., Appellant.

*Public service companies—Railroads—Street railways—Agreement as to expenses of watchman at crossings—Order of Public Service Commission.*

1. Where a street railway company agrees in writing with a railroad company to pay one-half the wages of watchmen at certain grade crossings "if at any time in the future it shall be necessary to maintain a watchman" and the Public Service Commission, without knowledge or notice of the agreement, and without the street railway company being a party to the proceedings, makes an order on the railroad company to provide watchmen at the crossings, the agreement is not superseded by the order, and the railroad company may recover from the street railway company one-half of the wages of the watchmen.

2. In such case the public had no interest in the annulment of the contract between the two companies.

3. The right to annul contracts is under the police power of the State, and, unless it appears that the contract does in some measure affect adversely the welfare of the public, the legislature cannot interfere merely to relieve a party from the burden of an improvident contract.

Argued September 30, 1924. Appeal, No. 151, Jan. T., 1924, by defendant, from judgment of C. P. Fayette Co., Dec. T., 1921, No. 598, for plaintiff on case stated in suit of Director General of Railroads, operating the Pennsylvania R. R., v. West Penn Railways Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Case-stated. Before VAN SWEARINGEN, P. J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff for $3,240.92. Defendant appealed.

*Error assigned* was judgment, quoting it.

*D. I. McCahill,* of *McCahill, McCahill & Tabor,* with him *Brownfield & McDaniel,* for appellant.—The necessity contemplated and provided for in the contract has not arisen and therefore the contract does not apply.

The contract was abrogated and superseded by the Public Service Company Law, and is therefore void: York Water Co. v. York, 250 Pa. 115; Pittsburgh & Lake Erie R. R. v. P. S. C., 75 Pa. Superior Ct. 282; Pressed Steel Car Co. v. Boro., 9 Pa. Corp. R. 521.

The commission, having exercised its exclusive jurisdiction and having ordered the Pennsylvania Railroad Company to provide and maintain gates and watchmen for its crossings, that order is an adjudication of the matter and is final: St. Clair Boro. v. Ry., 259 Pa. 462.

The court below was without jurisdiction: Edgewood Boro. v. Ry., 268 Pa. 201; Fogelsville & Trexlertown Electric Co. v. Power & Light Co., 271 Pa. 237; Erie v. P. S. C., 74 Pa. Superior Ct. 265.

*R. W. Playford,* of *Playford & Phillips,* for appellee, was not heard.

OPINION BY MR. JUSTICE FRAZER, November 24, 1924:

Plaintiff sued in the common pleas to recover from defendant company one-half the cost of erection, maintenance and operation of safety gates at two grade crossings on Main Street in the City of Uniontown. Judgment was entered in the court below in favor of plaintiff, and defendant appealed.

Defendant operates its cars on east and west Main Street. The tracks of the railroad operated by plaintiff are laid at grade and crossed Main Street at two places. In 1903, plaintiff and defendant entered into an agreement, in writing, respecting these and other grade crossings, wherein it was provided, inter alia, "if at any time in the future it shall become necessary to maintain a watchman or watchmen, or gate or gates, at said crossings, or either thereof, said passenger railway shall pay

one-half the cost of erection and maintenance of said gate or gates and the wages of said watchman or watchmen." Subsequently the City of Uniontown complained to the Public Service Commission of the danger incident to the grade crossings over plaintiff's railroad within the city, and after hearing, the commission ordered the railroad company to provide a watchman at the east Main Street crossing and safety gates and a watchman at the west Main Street crossing. This order was subsequently amended so as to require a watchman only at each crossing. In complying with these orders the railroad company expended $6,481.84, and on refusal of the railways company to pay one-half of the expense incurred, the present action, to recover such proportion of the expense in accordance with the terms of the agreement above referred to, was instituted.

The contract between the companies was not brought to the attention of the Public Service Commission at the hearing nor referred to in any way in the argument before that body. Neither was defendant a party to the proceedings, although one of the defendant's employees was called as a witness to testify concerning the operation of defendant's cars over the crossing. Notwithstanding this, defendant claims the agreement was superseded by the public service company legislation and the ruling of the Public Service Commission, and the order on the railroad to install gates and provide a watchman, was an adjudication of the question as to the payment of the expense necessarily to be incurred and consequently imposed that burden entirely on the railroad company, thus relieving defendant from its obligation under the contract.

The orders made by the commission do not expressly provide for the payment of expenses. They simply direct the Pennsylvania Railroad Company to do the various things specified. The Public Service Commission, so far as appears, had no knowledge of the existence of the agreement and could not have intended to abrogate it

or render it ineffective by a mere direction to the railroad company to install the safety system in question. The agreement, consequently, remains in force unless superseded by article V, section 12, of the Public Service Company Law, giving to the Public Service Commission the exclusive power to determine and fix the terms and conditions under which the tracks of one public service company may be constructed, operated and maintained over the tracks of another such company.

Under the circumstances arising here, it is unnecessary to discuss the question whether the Public Service Commission had authority to cancel the contract in question, if its terms were deemed unfair or in any way prejudicial to the interests of the public. That question was not before it. If a ruling thereon was desired the question should have been directly raised. As the contract did not concern rates or affect the service to be given by the railroad company, but merely provided for a division of the expense incident to the use of the crossings occupied in common by both companies, we are unable to agree with appellant's argument that the order of the commission directed to the railroad company and requiring it to provide and maintain watchmen at the two crossings, ipso facto, abrogates a contract previously made by the two companies using the crossings mutually intended for their maintenance and providing for the division of the expense, "if at any time in the future it shall be necessary to maintain a watchman," etc. Had the contract dealt with the question of proper safety devices to be installed at the crossings, defendant would, of course, have been directly affected by the order of the commission and a different question would be presented. The present contract, however, has nothing to do with the installation of such devices. It merely provides for a sharing of the expense if at any time an outlay for watchmen should become necessary. There is no limitation on the reason for such necessity and the court below properly held the order of the commission was a

necessity contemplated by the parties. Conceding the power of the commission to order a division of the cost of installation and maintenance of a safety system under article XI, section 1, sub-division T, and article V, section 12, of the Act of 1913, it made no order, and thereby left unaffected the contract relating thereto between the two companies. In this the public had no interest. It does not affect, in any measure, at least so far as appears from the record in this case, the service or charges to be rendered the public. The right to annul contracts is limited to the police power, and unless it appears the contract does in some measure affect adversely the welfare of the public, the legislature cannot interfere merely to relieve a party from the burdens of an improvident contract: Arkansas Natural Gas Company v. Arkansas Commission, 261 U. S. 379; Swarthmore Boro. v. Public Service Commission, 277 Pa. 472. The court below did not err in entering judgment in favor of the plaintiff.

Judgment affirmed.