# Schuylkill Railway Company, Appellant, *v.* The Public Service Commission of The Commonwealth of Pennsylvania.

*Public Service Company Law — Public Service Commission — Railroads—Crossings — Repairs — Jurisdiction of Public Service Commission.*

The Public Service Company Law does not invest the Public Service Commission with executive control of a railroad company or street railway company with respect to the general functions and activities of such companies.   They may exercise their corporate powers without interference from the commission, except as expressly allowed by the statute.

Under the provisions of section 12 of article III of the Public Service Company Law every public service company is entitled to the full enjoyment and exercise of all and every of the rights, powers and privileges which it possessed at the time of the passage of the act, except as otherwise expressly provided.   The Public

Service Commission has no jurisdiction over a railroad company in cases where track repairs are to be made which involve no change of location of grade, or method of construction, and are mere replacements of that which was in existence long before the creation of the Public Service Commission.

Where a railroad company has repaired a grade crossing and presented a bill for the expense thereof to a street railway company, in accordance with the terms of an agreement between the two companies, providing for the repairs to the crossing, the subject is not within the authority of the commission on the facts as presented, and the enforcement of the contract is a matter for the courts.

Argued October 21, 1924. Appeal, No. 201, Oct. T., 1924, by plaintiff, from order of Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket 9754-1923, in the case of Schuylkill Railway Company v. Public Service Commission of the Commonwealth of Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Application for an apportionment of the expenses of the reconstruction of a grade crossing.

The facts are stated in the opinion of the Superior Court.

The commission dismissed the application, averring as a reason for the dismissal that the commission was without jurisdiction in the premises. Plaintiff appealed.

*Error assigned* was the order of the commission.

*Arthur L. Shay,* and with him *Frederick M. Leonard,* for appellant.

*Otto E. Farquhar,* for Lehigh Valley Railroad Company, intervening appellee.

*Frank M. Hunter,* Counsel, and *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY HENDERSON, J., March 16, 1925:

A brief statement of facts will exhibit the basis of this controversy. The Lehigh Valley Railroad Company, owning and using a railroad track in the Borough of Ashland in Schuylkill County, entered into an amicable arrangement in writing with the Schuylkill Traction Company, by the terms of which the latter company was permitted to lay its track across the track of the former company. This agreement was made in 1892 and the crossing was constructed soon thereafter. In 1921, the Lehigh Valley Company repaired the crossing by putting in a new frog in place of the one theretofore in use which had become worn and out of repair. A bill for the cost of this improvement was presented to the Schuylkill Railway Company, successor to the Schuylkill Traction Company, the Lehigh Valley Railroad Company claiming that the Schuylkill Company was bound for the cost of the repairs under its agreement with the Lehigh Valley Company made in 1892, and thereupon the Schuylkill Railway Company presented its petition to the Public Service Commission praying for an apportionment of the cost of the work done by the Lehigh Valley Railroad Company. This petition was dismissed by the Public Service Commission on the ground that it was without jurisdiction to make an order in the premises. The studiously prepared and comprehensive brief of the appellant covers a field of inquiry much wider than the actual subject of contention invokes. It must be admitted that there was an obligation on one or the other or both of these corporations to keep the crossing in good condition. One of them, the intervening appellee, discharged that duty and there remains for consideration therefore only the question whether the appellant which did nothing may anticipate a possible responsibility on the contract referred to by a proceeding before the Public Service Commission to determine the extent of its responsibility. Before the authority of the commission to intervene can be invoked, its jurisdiction

must appear from the express terms of the statute under which it exists or from necessary implication arising from the powers conferred. Limiting the examination to the subject of railroad crossings, it is clear that the jurisdiction of the commission applies in "the construction, alteration, relocation or abolition of any crossing." Reliance is placed by the appellant on article II, section 1, paragraph (t) and article V, section 12 of the Public Service Act, to sustain the position that the commission has jurisdiction on the petition now under consideration. Section 1 requires public service companies to obey all lawful orders and regulations of the commission made under the provisions of the act "regulating the manner in which the tracks or other facilities of any railroad corporation, street railway corporation, or any other public service company, may be constructed across the tracks or other facilities of any other railroad corporation, etc." This evidently has reference to construction and not to maintenance. It covers the whole scheme of the crossing of the track of the one company by that of the other. The other clause of the paragraph involved regulates the manner in which such crossing "shall be operated, maintained, and protected, including the stationing of watchmen thereat, installation and regulation of lights, blocks, or other system of signalling, safety appliances, devices or such other means or instrumentalities as the commission may prescribe," the object of these provisions being as expressed in the statute "to the end, intent and purpose that accidents may be prevented." The language recited has clear reference to the manner in which the crossings shall be operated with regard to safety and the whole subsection (t) has reference to "lawful orders and regulations of the commission." In no part of it is there any reference to repairs of the track voluntarily made. Section 12 of article V to which we are also referred gives the commission authority to prescribe in accordance with plans and specifications to be approved by it the reasonable

manner in which the tracks or other facilities of any public service company may be constructed across the tracks or other facilities of any other public service company, at grade, or above or below grade, and to prescribe the terms and conditions of installation and operation, maintenance and protection of such crossings which may now or hereafter be constructed, including the stationing of watchmen thereat, or the installation of lights, blocks or other system of signalling; this to the end, intent and purpose that accidents may be prevented and the safety of the public promoted. These provisions relate to the operation of the crossing and to the maintenance of it with respect to the safety of persons lawfully using it, and do not prevent or interfere with the right of either of the operating companies to renew rails or frogs or other appliances as may be necessary because of wear and tear. We are unable to find any authority in the statute for the application of the law except where the subject is brought forward on the initiative of the commission, or the jurisdiction of the latter is invoked in connection with a development or improvement in progress or about to be undertaken. The public service law does not invest the commission with executive control of a railroad company or street railway company with respect to the general functions and activities of such companies. They may exercise their corporate powers without interference from the commission except as expressly allowed by the statute. This clearly appears from the language of article III, section 12 of that enactment; "every public service company shall be entitled to the full enjoyment and exercise of all and every the rights, powers, and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise expressly provided." One of these rights is to maintain the mechanical agencies of their business as necessity for repairs may arise. If new rails or ties are to be put down to replace those which are worn, or locomotives are to

undergo reconstruction, or cars are to be repaired, these matters may be attended to by the corporation without supervision from the commission. Safety, convenience and equality of service were the objects intended to be promoted by the Public Service Act, and matters not immediately related to these objects are not within the jurisdiction of the commission. We are unable to conclude that when track repairs are to be made which involve no change of location or grade, or method of construction, and are mere replacements of that which was in existence long before the creation of the Public Service Commission, the authority of the latter body must be invoked before such repairs may be undertaken. No complaint was presented to the commission with respect to the condition of the frog replaced, nor was any action taken by the commission on its own motion. The case was one of the repair of the track at the crossing, quickly made in the same form as had existed from the beginning. Whether the Lehigh Valley Railroad Company has a demand for the cost of the work which may be successfully enforced is not a question which we are now called upon to answer; nor could the commission dispose of that subject. It is an inquiry which must be answered in a proceeding at law: Director General of Railroads v. West Penn Railways Co., 281 Pa. 309. That the railroad company had the right to repair its own track is clear and admitted by the appellant; that the Public Service Commission was not called upon to take any action with respect to the placing of the new frog is also conceded. There is nothing left therefore except the subject of the appellant's obligation to reimburse the railroad company for the cost of the repairs. That subject is not within the authority of the commission on the facts as presented.

Much of the argument relates to the liability of the successor to the original party to the contract with the Lehigh Valley Railroad Company under the contract

made in 1892, but in view of what has already been said, it is unnecessary to give attention to that subject.

The finding of the commission is affirmed and the appeal dismissed at the cost of the appellant.