Pennsylvania Railroad Company, Appellant, *v.*
Pennsylvania Public Utility Commission.

2

Argued March 14, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Spencer G. Nauman,* of *Nauman, Smith & Hurlock,* for appellant.

*Harry H. Frank,* with him *S. Graff Miller* and *Harry M. Showalter,* for appellee.

*Forrest Mercer,* with him *Claude T. Reno,* Attorney General, and *George W. Keitel,* Assistant Deputy Attorney General, for Department of Highways, intervenor.

*Addison M. Bowman,* for intervenors.

OPINION BY PARKER, J., June 26, 1939:

The Department of Highways of the Commonwealth of Pennsylvania filed a complaint with the Public Service Commission alleging that a bridge carrying highway route No. 123 over the grade of the tracks of the Pennsylvania Railroad Company was out of repair and asked the commission to determine the extent of the necessary repairs and fix the responsibility for such repairs and for future maintenance of the structure. After hearings the Public Utility Commission, which succeeded the Public Service Commission, made an order requiring the repairs to be made at the equal expense of the Pennsylvania Railroad Company and the Department of Highways, and requiring the Pennsylvania Railroad Company to maintain the sub-structure and super-structure of the bridge proper, exclusive of roadway planking, and requiring the Department of Highways to maintain the roadway planking on the bridge and the "state highway approaches to the bridge." The Pennsylvania Railroad Company has appealed from that order.

There are no disputed facts involved in this appeal. The appellant relies solely on the contention that it is relieved from all liability for maintenance or repair of the bridge by a private contract between the Cumberland Valley Railroad Company, now merged with the appellant, and certain interested municipalities whereby such municipalities agreed to repair and maintain the bridge. Such contention is contrary to the decisions of the Supreme Court and of this court.

In 1902, long after the highway was laid out and opened to traffic, the Cumberland Valley Railroad Company, at its own expense, erected a bridge in order to eliminate a grade crossing. The structure was located partly in the borough of Camp Hill and partly in the townships of Lower Allen and East Pennsboro, Cum-

berland County, and was constructed after permission obtained from those municipalities. The borough and the townships respectively agreed in writing with the railroad company to each "accept and maintain that portion of said bridge and approaches which may be located within" the particular municipality.

In *Pittsburgh & L. E. R. R. Co. v. P. S. C.*, 75 Pa. Superior Ct. 282, 289, we considered a similar situation in an opinion by Judge (now Mr. Justice) LINN where it was contended as here that the railroad company was exempt from liability to repair a bridge by a contract which it held with a municipality. We there said: "We need only suggest that such contracts are generally held to have been made subject to the implied term that the lawful exercise of the police power might take place at any time and might require that the railroad company then be called upon to maintain the bridge notwithstanding the borough's agreement to do so. See *R. R. Co. v. Bristol*, 151 U. S. 556; *N. P. R. Co. v. Duluth*, 208 U. S. 583; *C. M. & St. P. R. Co. v. Minneapolis*, 232 U. S. 430; *M. P. R. Co. v. Omaha*, 235 U. S. 121; *D. & R. G. R. Co. v. Denver*, 250 U. S. 241; *N. P. R. Co. v. Puget Sound, etc., R. Co.* 250 U. S. 322." The principles announced in that case were approved by the Supreme Court in *Pittsburgh & L. E. R. R. Co. v. McKees Rocks Boro*, 287 Pa. 311, 319, 135 A. 227. Also see *Schuylkill County v. P. S. C.*, 77 Pa. Superior Ct. 504; *Wilkes-Barre Ry. Corp. v. P. S. C.*, 124 Pa. Superior Ct. 362, 188 A. 546.

The State, in the exercise of its police power, has entrusted to the Public Utility Commission, just as it had formerly to the Public Service Commission, broad powers in respect of the crossing of facilities of utilities and particularly of the crossing of highways and railroads including the power to determine "the manner and conditions in or under which such crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of the safety

of the public": Act of May 28, 1937, P. L. 1053, §409 (66 PS §1179). By §411 (66 PS §1181) the commission is authorized to determine how the expenses are to be borne "by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may ...... determine, unless such proportions are mutually agreed upon and paid by the interested parties": *West Conshohocken Borough v. P. U. C.,* 135 Pa. Superior Ct. 295, 5 A. 2d 590.

The commission, to promote the safety of the public, is authorized to divide the expense of the elimination of grade crossings among certain designated persons and the Commonwealth. In so doing it is acting on behalf of the public generally and mere private contracts are not permitted to stand in the way. This does not mean, as we shall later show, that either the utilities or the municipalities may be deprived of all contract rights as between themselves, but only that they are not relieved by their contracts from performing those public duties imposed on them by virtue of an exercise of the police power.

Now, the appellant argues that "the commission had no jurisdiction to abrogate the contracts" between the railroad company and the municipality and relies upon *Penna. R. R. Co. v. Pennsylvania-Ohio Elec. Co.,* 296 Pa. 40, 145 A. 686; *Pittsburgh & L. E. R. R. Co. v. McKees Rocks Boro,* supra; *Director General v. West Penn Rys. Co.,* 281 Pa. 309, 126 A. 767; *Swarthmore Boro v. P. S. C.,* 80 Pa. Superior Ct. 99.

With that statement of the law as a general proposition we are in entire accord and the cases cited support it, but it does not follow that the utilities and municipalities are not and cannot be made responsible in the first instance for the performance of a public duty—here to safely maintain a bridge over tracks of a railroad. The contracts are not abrogated but after the Public Utility Commission has fixed the liabilities of

those concerned to the public, such persons are then referred to a court of law to have adjudicated their contract rights. In fact, the very cases relied upon by the appellant support our conclusions. This is best illustrated by *Director General v. West Penn Rys. Co.*, supra.

In the West Penn case the commission had directed the Pennsylvania Railroad Company to install gates and provide a watchman at a grade crossing of the public highway and the railroad tracks. The railroad company, after complying with the order, sued in common pleas to recover from a street railway company one-half of the cost of erection, maintenance and operation of safety gates, relying on the terms of a written contract between them whereby the street railway company agreed to pay such share of the cost if gates or a watchman should in the future be required. Judgment was recovered in the court below and the Supreme Court affirmed the decision. It was there made clear that the railroad company was in the first instance required to furnish certain facilities as a public duty enforced under the police powers of the state, but that since the assertion of the Pennsylvania Railroad Company's contractual rights interfered in no way with an exercise of the police powers and the public welfare was not adversely affected, the legislature could not interfere "merely to relieve a party from the burdens of an improvident contract." *Pittsburgh & L. E. R. R. Co. v. McKees Rocks Boro*, supra, is to the same effect.

*Swarthmore Boro v. P. S. C.*, supra, is distinguished by the fact that the street railway company there, as a condition of its franchise, was obligated to keep in order a street occupied by its tracks. This condition the borough was constitutionally (Article XVII, §9) authorized to impose: *Scranton v. P. S. C.*, 268 Pa. 192, 194, 110 A. 775. We there held that the ability of the utility to perform its public duties was only remotely affected by the contract in question and that the legislature had

not conferred on the commission authority to act in such a case as was presented. Here we are concerned not with the regulation of utilities as such in respect of the performance of those things which they are authorized to do by virtue of charters and franchises, but with a grade crossing. The responsibility to protect the public generally at grade crossings is not placed upon the utilities alone, but may be required to be shared by cities, boroughs, townships, counties or even the Department of Highways. The determination of those who are responsible for the installation and maintenance of facilities at grade crossings and the enforcement of such decision affects directly public safety and welfare. To deny to the commission the power to fix the initial liability for the maintenance of those facilities deemed necessary by the commission for the safety and welfare of the public would be to defeat the very purpose of this legislation. Under the circumstances present here the order of the commission was proper but the appellant is not concluded thereby from enforcing such contract rights, if any, as it may have against the municipalities with whom it has contracted.

The order of the commission is affirmed without prejudice to the appellant to proceed in a court of law to enforce such contract rights, if any, as it may have against the borough or townships. The appellant shall pay the costs of this appeal.