**Pennsylvania Railroad Company, Appellant, *v.* Pennsylvania Public Utility Commission.**

Argued September 27, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Windsor F. Cousins,* with him *L. K. Connell,* for appellant.

*William S. Ramsay,* with him *Harold A. Scragg* and *James H. Duff,* Attorney General, for appellee.

OPINION BY RHODES, J., January 27, 1944:

The Department of Highways of the Commonwealth of Pennsylvania filed an application with the Public Utility Commission seeking the commission's approval of the construction of two below-grade crossings at the points where Twenty-sixth Street, in the city of Philadelphia, was to pass under two bridges of the Pennsylvania Railroad Company. At the hearing, the application was amended to the effect that the two bridges involved in the proceedings were jointly owned by the Pennsylvania Railroad Company and the Baltimore & Ohio Railroad Company. There is no dispute about the facts.

It appears that Twenty-sixth Street extends from Penrose Avenue to Washington Avenue, and that the portion of this street between Penrose Avenue and Passyunk Avenue was not at that time a highway opened for traffic. In order to open Twenty-sixth Street to the public the two below-grade crossings had to be constructed. The money to carry out this project was to be furnished by the Federal Government under the authority and provisions of the Defense Highway Act of 1941. The City of Philadelphia, subject to reimbursement by the Federal Government, was to compensate for damages all owners of property, exclusive of the Pennsylvania Railroad Company and the Baltimore & Ohio Railroad Company, taken, injured, or destroyed by reason of the construction of the below-grade crossings.

The commission's order contained the following:

"13. That, upon completion of the improvement herein ordered and its opening to public use, The Pennsylvania Railroad Company furnish all materials and do all work necessary to maintain the substructure and superstructure of the two bridges at Survey stations 56 + 60 and 75 + 75, without prejudice to its right to collect from other parties according to any lawful understanding or agreement."

The Pennsylvania Railroad Company filed a petition for reconsideration and modification of the order, stating that the order should be against both the Baltimore & Ohio Railroad Company and the Pennsylvania Railroad Company to furnish all materials and do all work necessary to maintain the substructure and superstructure of the two bridges, without prejudice to their, or either of their, rights to collect as between themselves or from other parties according to any lawful understanding or agreement. The Baltimore & Ohio Railroad Company filed an answer to this petition, and concurred with this request of the Pennsylvania Railroad Company, and admitted that each of the bridges was used and owned jointly by the Pennsylvania Railroad Company and the Baltimore & Ohio Railroad Company, or its subsidiary, Schuylkill River East Side Railroad Company. It further averred that the joint ownership of the said bridges and the construction and maintenance thereof were covered by the provisions of the "South Philadelphia Agreement of 1914." The commission denied the petition and refused to modify its order. The Pennsylvania Railroad Company has appealed.

Appellant complains that the part of the commission's order placing sole responsibility for the maintenance of the two bridges upon it is arbitrary and unreasonable.

The scope of our review is set forth in section 1107, art. 11, of the Public Utility Law, May 28, 1937, P. L.

1053, as amended by the Act of July 3, 1941, P. L. 267, §3, 66 PS §1437: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." See *Horn's Motor Express, Inc., v. Pa. P. U. C.,* 148 Pa. Superior Ct. 485, 487, 26 A. 2d 346, 348.

The record shows that one bridge was built to accommodate two tracks, but that it actually contains only one track, and that this is used jointly by appellant and the Baltimore & Ohio Railroad Company, or its subsidiary. The second bridge contains four tracks, two of which are main line tracks of the Baltimore & Ohio Railroad Company, or its subsidiary, leading to and from Philadelphia, the third track is used jointly by the two railroads, and the fourth track is owned by appellant but also used jointly by both railroads. It also appears that the two bridges involved were constructed pursuant to an agreement by the railroad companies operating in and around Philadelphia and the city of Philadelphia, and is known as the "South Philadelphia Agreement of 1914." This agreement, however, was not introduced in evidence, and the percentage of the maintenance which each of the companies is to bear is not certain. Although the bridges are used jointly, they are apparently units as to maintenance. There is nothing in the record to indicate that the structures for such purpose are divisible. No line can be drawn marking the division between the part used by appellant and the part used by the Baltimore & Ohio Railroad Company.

The Public Utility Law of May 28, 1937, P. L. 1053, art. 11, §1112, 66 PS §1442, provides that whenever the commission makes an order under the provisions of the act it shall be prima facie evidence of the facts found.

By section 409 of the Public Utility Law, as amended,

66 PS §1179, the commission is given broad and exclusive powers as to the construction, relocation, alteration, or abolition of crossings of the facilities of public utilities by the facilities of other public utilities or by a highway, and as to "the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public" (*Conshohocken Borough v. Pa. P. U. C. et al.*, 135 Pa. Superior Ct. 295, 300, 5 A. 2d 590); and it may order the work of construction, relocation, alteration, protection, or abolition of any such crossing to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth.

By section 411 of the Public Utility Law, 66 PS §1181, the resulting expenses of the construction, relocation, alteration, protection, or abolition of crossings of railroads and highways are directed to be borne and paid by the "public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may ...... determine, unless such proportions are mutually agreed upon and paid by the interested parties." *Department of Highways of Pennsylvania v. Pa. P. U. C.*, 141 Pa. Superior Ct. 376, 380, 14 A. 2d 611.

The basis of the commission's action in this proceeding is the interest of the public. See *Perry County Telephone & Telegraph Co. v. Public Service Commission*, 265 Pa. 274, 281, 108 A. 659; *Modern Transfer Co., Inc., v. Pa. P. U. C. et al.*, 139 Pa. Superior Ct. 197, 202, 12 A. 2d 458. The proper protection and maintenance of such bridges over the highway are necessary for the safety and welfare of the public, and the determination of those who are responsible for the protection and maintenance thereof and the enforcement of such decision affects directly public safety and welfare; and

it is in the exercise of its police power that the state has entrusted the Public Utility Commission broad powers in respect of the crossing of highways and railroads including the power to determine "the manner and conditions in or under which such crossings shall be maintained, operated, and protected." *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 136 Pa. Superior Ct. 1, 4, 7, 7 A. 2d 86. And the lawful exercise of the police power may require appellant to maintain the bridges in question notwithstanding any agreement with the Baltimore & Ohio Railroad Company. *Pittsburgh & Lake Erie R. Co. v. Public Service Commission,* 75 Pa. Superior Ct. 282, 290. This, it is recognized, is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably. *Lehigh & New England R. Co. v. Public Service Commission,* 126 Pa. Superior Ct. 565, 572, 191 A. 380. But, under the facts and circumstances of the present case, we think the commission had the power and acted within its administrative discretion in fixing the initial liability for the maintenance of the two bridges upon appellant. See *Schuylkill Railway Co. v. Public Service Commission et al.,* 268 Pa. 430, 433, 112 A. 5. Appellant's contractual rights were not affected or abrogated in any way thereby. *Director General of Railroads v. West Penn Rys. Co.,* 281 Pa. 309, 126 A. 767. Nor do we find any ground for appellant's apprehension that additional tort liability may arise from the commission's order.

It was the position of the Baltimore & Ohio Railroad Company, as set forth in its answer to appellant's petition to modify the commission's order, that the "joint ownership of said bridges and the construction and maintenance thereof" were covered by the provisions of the "South Philadelphia Agreement of 1914." This agreement was not before the commission. Moreover, beyond the fact of joint ownership and use, the actual operating interests were not disclosed, and it does not

appear that there was a division of the maintenance cost on any basis, nor does it appear what provision was made for the performance of the maintenance work. For the purpose of maintenance there is nothing to indicate that the bridges were physically divisible. Assuming, under the agreement, the Baltimore & Ohio Railroad Company, or its subsidiary, had a duty to join in the maintenance of the bridges, nevertheless appellant is not thereby relieved of any of its responsibility in connection with the improvement constructed in accordance with the commission's order. The order merely requires appellant to do what it is obliged to do for the safety and welfare of the public. The commission might have included others and apportioned the cost of maintenance under acceptable facts. But we would be at a loss to know from the record what percentage of the cost of maintenance should be imposed upon the Baltimore & Ohio Railroad Company, or its subsidiary. " 'It is well settled that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings, but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks or to carry their tracks over such highways: Chi. Mil. & St. P. Ry. v. Minneapolis, 232 U. S. 430, 438': Erie R. R. v. P. S. C., 271 Pa. 409 [114 A. 357]. It is the presence and ownership of the track involved, not any benefit conferred, which places liability on the railroad": *Lehigh Valley R. R. Co. v. Public Service Commission*, 105 Pa. Superior Ct. 423, at page 428, 161 A. 422, at page 423. The act confers on the commission, in cases of this type, exclusive power to determine and prescribe the manner and conditions as to maintenance. To assure complete and adequate maintenance and a compliance with its order the commission was justified in directing its order against appellant alone; consequently in this respect the order was neither arbitrary nor unreasonable.

The order of the commission is affirmed.