St. Peter's Roman Catholic Congregation of Mc-
Keesport et al., Appellants, *v.* Pennsylvania
Public Utility Commission.

Argued April 23, 1947. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Edward J. McGinness,* for St. Peter's R. C. Congre-
gation, appellant.

*Harry H. Meizlik,* for City of McKeesport, appellant.

*Jack F. Aschinger,* with him *William M. Rutter,* for appellee.

*Vincent M. Casey, Louis Caplan, Margiotti & Casey* and *Sachs & Caplan,* for intervening appellees.

OPINION BY ROSS, J., July 17, 1947:

These appeals are from an order of the Public Utility Commission granting an application by The Baltimore and Ohio Railroad Company for approval of the alteration of a railroad crossing in the city of McKeesport.

The Act of May 28, 1937, P. L. 1053, Article IV, section 406, 66 PS 1176, provides in part as follows: "Every public utility engaged in a railroad business shall, upon application of any owner or operator of any lateral railroad, or any private sidetrack, or of any shipper tendering property for transportation, or of any consignee, construct, maintain, and operate at a reasonable place and upon reasonable terms a switch connection with any such lateral railroad or private sidetrack which may be . . . reasonably practicable and can be put in with safety, and will furnish sufficient business to justify the construction and maintenance of the same . . ." The Ruben Furniture Company is presently constructing a shipping dock to serve its seven-story warehouse building in the city of McKeesport. This property is bounded on the south by Seventh Avenue, and on the east by the two main tracks of the B. & O. R. R. Co. in Pennsylvania. In order to provide railroad facilities to the warehouse, the B. & O. R. R. Co. proposes to construct a siding track in the city of McKeesport extending northwardly from an existing main line track across Seventh Avenue at grade, to and upon the property of the Ruben Furniture Company. The siding track will cross Seventh Avenue about twelve feet west of the westerly of the two tracks at the existing crossing at grade across Seventh Avenue.

The Act of May 28, 1937, P. L. 1053, Article IV, section 409 as amended, 66 PS 1179, provides, inter alia, that: "(a) No public utility engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across any highway at grade or above or below grade, or at the same or different levels . . . and, without like order, no such crossing heretofore or hereafter constructed shall be altered, relocated or abolished . . . (b) The commission is hereby vested with exclusive power to . . . determine and prescribe, by regulation or order, the points at which, . . . and the manner in which, such crossing may be constructed, altered, relocated or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of the safety of the public . . ." In the instant application, filed under the provisions of this act, The Baltimore and Ohio Railroad Company sought approval of the alteration of the existing crossing at Seventh Avenue by the construction of an additional side track across the highway. St. Peter's Roman Catholic Congregation and the City of McKeesport, appellants, opposed the application. The church, which has school properties adjacent to the existing crossing at grade, objected to the construction of the siding track across Seventh Avenue, contending that any additional tracks across Seventh Avenue would increase the hazard to school children who must use the crossing daily and because the noise of passing engines and trains interferes with the classroom work. The city objected for the reason that it is attempting to eliminate crossings at grade within the city and that any additions to existing crossings at grade will increase the hazard at such crossings. The protestants have appealed from the order of the commission which approved the application and ordered, inter alia, "2. That the existing crossing at grade, at a point in the City of McKeesport,

Allegheny County, where the main tracks of The Baltimore and Ohio Railroad Company cross Seventh Avenue, be altered by the construction of an additional siding track extending at grade across Seventh Avenue to the property of Ruben Furniture Company . . ."

Section 1107, Article XI, of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS 1437, provides as follows: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." The question before the commission was an administrative one and its decision, if based upon substantial evidence with rational probative force, will not be disturbed by this court unless the order is capricious, arbitrary, or unreasonable, an error of law or a violation of constitutional rights. *Cole v. Pa. P. U. C.*, 146 Pa. Superior Ct. 257, 22 A. 2d 121; *Leaman Transportation Corp. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 303, 33 A. 2d 721.

According to the testimony relative to the present railroad crossing at Seventh Avenue, "all through trains of The Baltimore and Ohio Railroad pass through the tracks at that point, which include 38 through passenger trains daily, and seven scheduled trains, and in addition, approximately 30 additonal trains which do not run on a direct schedule, and light engines pass through the town. This is a direct hook-up for trains running from New York to Chicago." A witness for the applicant testified that train movements over the highway on the proposed siding track would consist of approximately one movement in each direction weekly and would consist of one car of merchandise. In view of the present railroad traffic over the crossing, it would seem that the additional car movement over the siding would add little to the existing hazard. However, to protect the public, the commission ordered: "5. That The Baltimore

and Ohio Railroad Company furnish all materials and do all the work necessary to install a standard reflector-type cross-buck railroad crossing warning sign at a proper location along Seventh Avenue on each side of the crossing at grade, herein ordered altered, and properly install an additional reflector-type sign reading '3 TRACKS' on the standard supporting the cross-buck sign. . . . 8. That The Baltimore and Ohio Railroad Company furnish all materials and do all work necessary to effect the modernization of the railroad-highway manually operated grade crossing gates installed at the crossing, including the installation of pedestrian arms and the operation of supplemental electric gate marker lights on the roadway gates, . . . 13. That a member of the train crew, equipped with a red flag during daylight hours and with a red lantern and a white lantern during the hours of darkness, precede each and every movement of each locomotive, car or train across Seventh Avenue on the industrial siding track at the crossing at grade, herein ordered altered, and properly warn the traveling public of the approach of such locomotive, car or train."

Subject to the provisions of the Act of May 28, 1937, P. L. 1053, supra, the applicant was required to provide a side track for the Ruben Furniture Company, over which the latter might convey its goods. The assistant division manager of the applicant, Willard D. Almy, in response to the question, "Would it be possible or feasible to serve this warehouse by having the siding installed at a different location?" answered, "It would be possible but not feasible". The C. J. Murphy Company, predecessor in title of the Ruben Furniture Company, had a siding "which came in from the main track of the B. & O. and went directly into their warehouse by a 50 degree curve". This side-track was removed a few years ago. Almy testified: "Q. Has any consideration been given to the installation or construction of a siding at the site where it was formerly? A. Yes, that was

objected to by the B. & O. for two reasons. First, on account of being a facing point switch. Q. Explain that. A. It is a switch or a lead off of a track which is faced by the oncoming train. If your train is going east, your facing point would cause the train coming along that track in an easterly direction, when the switch is turned, to be diverted from that track. It is a menace to the normal traffic of through passenger trains. Q. And a menace to the traveling public? A. Yes. The second objection was the 50 degree curvature which frequently caused derailments, and generally unsatisfactory conditions."

The necessity for the private siding—or its advisibility—was a matter between the shipper and the utility; but the alteration of the crossing involves public safety and welfare, and the basis of the commission's action in this proceeding is the interest of the public. In *Pa. R. R. Co. v. Pa. P. U. C.*, 154 Pa. Superior Ct. 86, 35 A. 2d 588, this court, speaking through Judge (now President Judge) RHODES, stated at page 92, ". . . it is in the exercise of its police power that the state has entrusted the Public Utility Commission broad powers in respect of the crossing of highways and railroads including the power to determine 'the manner and conditions in or under which such crossings shall be maintained, operated, and protected'. Pennsylvania Railroad Co. v. Pa. P. U. C., 136 Pa. Superior Ct. 1, 4, 7, 7 A. 2d 86. . . . This, it is recognized, is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably."

In this case, the decision of the commission is based upon substantial evidence with rational probative force and the commission did not abuse its administrative discretion in entering the order appealed from. The appeals, therefore, are dismissed, and the order of the Public Utility Commission is affirmed, at the cost of the appellants.