City of Philadelphia, Appellant, and Pennsylvania Department of Transportation, Intervening Appellant, *v.* Public Utility Commission, Appellee, and The Bell Telephone Company of Pennsylvania, Intervening Appellee.

Argued February 11, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Matthew W. Bullock, Jr.,* First Deputy City Solicitor, with him *Charles Kovler,* Assistant City Solicitor, *David L. German, Jr.,* and *Levy Anderson,* City Solicitor, for appellant City of Philadelphia.

*Herbert G. Zahn,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, for intervening appellant.

*Alan R. Squires,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee Public Utility Commission.

*E. Everett Mather,* with him *John B. King* and *Donald F. Clarke,* for intervening appellee, Bell Telephone Company of Pennsylvania.

OPINION BY JUDGE WILKINSON, April 13, 1971:

The City of Philadelphia and the Southeastern Pennsylvania Transportation Authority (SEPTA) filed an application with the Pennsylvania Public Utility Commission for approval of the construction of crossings where tracks in the extension of the Broad Street subway in the bed of Broad Street will be crossed by city streets from Snyder Avenue south to Pattison Avenue in Philadelphia to accommodate travel to and from the new sports complex being constructed in Philadel-

phia at Broad Street and Pattison Avenue. Section 411(a) of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. 1181(a) provides that in granting the approval, the P.U.C. should decide who should pay for the expense of relocating public utility service lines and to apportion them if appropriate: "Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may, after due notice and hearing determine, *unless such proportions are mutually agreed upon and paid by the interested parties.*" (Emphasis supplied.)

Pursuant to this authority, after an appropriate hearing, the P.U.C. ordered the City of Philadelphia to reimburse the Philadelphia Electric Company and The Bell Telephone Company of Pennsylvania seventy-five percent (75%) of the cost of relocation of their respective lines exclusive of any betterments.

The City of Philadelphia appeals on the grounds that it has an agreement with both the Philadelphia Electric Company and The Bell Telephone Company of Pennsylvania that in exchange for the right to put lines in the city streets, these companies would pay all the expenses of any necessary relocation. The wording of the agreement is: "If, in the laying of water or gas pipes, sewers, or any other municipal work, it shall become necessary to change the location of any of the conduits, manholes or other structures, they shall be shifted or altered at the cost or expense of the owners, to such places as shall be directed by the Board of Highway Supervisors."

The validity of this agreement has been established and approved by the Supreme Court of Pennsylvania in the case of *Philadelphia Electric Co. v. Philadelphia,* 301 Pa. 291, 152 A. 23 (1930). The appellees would have us decide that the passage of time and change in situation now places the validity of these previously approved contracts in question, and that the proper forum to contest the validity is in the Court of Common Pleas on a suit by the City against the appellees to recover back the 75% of the costs it was ordered to pay and not before the P.U.C. We cannot accept this argument.

The City is not questioning the validity of these agreements which are valid on their face and have the approval of the Supreme Court of Pennsylvania. Since appellees take the position that this is not the appropriate forum in which to question them, then they, as moving parties, will have to initiate what they consider to be an appropriate action in an appropriate forum if they want the invalidity established. The authority of the Commission to allocate costs is expressly limited to those cases where the parties have not agreed on the disposition of the costs and they have not been "paid by the interested parties." Here, both of these conditions have been met. There is an agreement and the interested parties have paid the costs, for the order is for the Philadelphia Electric Company and The Bell Telephone Company of Pennsylvania to be *reimbursed* by the City.

Appellees rely on the line of cases that hold the Commission is not bound by the agreements of the parties. These are cases that involve the Commission's authority to order that work be done. Appellees have not cited a case and we have not found one in which the Commission ordered a reimbursement of a party where an agreement signed by the party to be charged

specifically provided that the party to be reimbursed should bear the costs. Further, the cases are quite clear that when the contract between the parties is ignored by the Commission, such action must be based on the public health, welfare and safety. *See Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission*, 136 Pa. Super. 1, 7 A. 2d 86 (1939); *Director General of Railroads v. West Penn Railways Co.*, 281 Pa. 309, 126 A. 767 (1924); *Pittsburgh and Lake Erie Railroad Co. v. Public Service Commission*, 75 Pa. Super. 282 (1920). Apparently cognizant of this fact, the Commission is careful to word its opinion as follows: "Upon full consideration of the matters and things involved, we find and determine that the construction of the crossings, as above described, is necessary or [sic] proper for the service, accommodation, convenience or safety of the public and that justice and equity require that the applicants bear their reasonable share of the cost of alterations, relocations and changes required by Philadelphia Electric Company and The Bell Telephone Company of Pennsylvania. . . ."

It should be noted that the Commission recognizes that it is the construction of the crossings that is required by the safety of the public, not the allocation of costs after the construction. The Commission does not explain how it concludes that justice and equity require that the City bear a reasonable share of the cost when the parties have specifically agreed otherwise and that agreement has the approval of the Supreme Court of Pennsylvania. The Philadelphia Electric Company asserts that the Commission has "exclusive power to allocate costs among the parties concerned." This position ignores the plain language of the statute which precludes such allocation when there is a mutual agreement and the costs have been paid. The case principally relied upon by the appellees seems to be *Pennsylva-*

*nia Railroad Company v. Pennsylvania Public Utility Commission,* 136 Pa. Super. 1, 7 A. 2d 86 (1939). In that case the facts were quite different from those in the instant case in very substantial ways. There the Department of Highways petitioned the Commission in an action against the Pennsylvania Railroad Company, the County of Cumberland, Township of Lower Allen, Cumberland County, and Township of East Pennsboro, Cumberland County. At issue was the repair of a bridge that none of the parties claimed to own and all agreed was in critical need of repair. The agreement in dispute was signed by the Township of East Pennsboro and by the Cumberland Valley Railroad Company. In the agreement, the railroad agreed to build the bridge and the township agreed to maintain it. However, since the agreement, the Cumberland Valley Railroad Company had been merged with the Pennsylvania Railroad Company and the township road and bridge had been taken over by the Pennsylvania Department of Highways. The respective rights of the parties with regard to the very substantial change in the ownership of the bridge and any continued obligations of either of the signators had never been determined. In the present case, the ownership of the facilities is clear and has never changed. The parties in question are the parties who signed the agreement. There is not and has never been any urgency to move for the public safety. Finally, and most importantly, here we have a specific agreement which has the specific approval of the Supreme Court of Pennsylvania.

It would seem that in recent years the appellees have been refusing to sign agreements similar to the one here involved and have successfully maintained the right to occupy crossings without signing such agreements and rely on the Commission to exercise exclusive control. *See Department of Highways v. Public*

*Utility Commission,* 198 Pa. Super. 87, 182 A. 2d 267 (1962); *Department of Highways v. Public Utility Commission,* 198 Pa. Super. 102, 182 A. 2d 273 (1962). In those cases, the utilities stated before the Commission that they were willing to pay all the costs of installation and maintenance but refused to sign an agreement to pay for relocation. If these utilities had refused to sign these agreements, the matter would not be before this Court.

For the foregoing reasons, we enter the following

### ORDER

The appeal of the City of Philadelphia is sustained and paragraphs 21 and 22 of the Commission's order dated June 1, 1970, are vacated and set aside and the City of Philadelphia is hereby relieved of any duty to reimburse Philadelphia Electric Company or The Bell Telephone Company of Pennsylvania 75% of the costs herein referred to.